ERSKINE et al, Plaintiffs, v. PYLE, Secretary of State, Defendant.

(213 N. W. 500.)

(File No. 6488. Opinion filed April 21, 1927.)

1. **States—Secretary of State—Secretary of State Must Furnish Copy of Bill on Tender of Statutory Fee Only Where Bill Has Become Law.**

   It was duty of secretary of state to furnish copy of General Appropriation Bill on tender of statutory fee only if bill had become law.

2. **States—General Appropriation Bill Held Within Constitutional Provision Providing For Presenting Bills to Governor; "Every" (Const. Art. 4, § 9).**

   Const. art. 4, § 9, providing that every bill which shall have passed Legislature shall, before it becomes a law, be presented to Governor, held to include General Appropriation Bill, since word "every" includes all.

3. **Statutes—Veto—Governor May Veto General Appropriation Bill As Whole or Any Item Thereof, and Approve Bill As To Remaining Items (Const. Art. 4 §§ 8, 10).**

   Const. art. 4, § 9, providing that every bill which has passed Legislature shall be presented to Governor for approval, and section 10, providing that Governor may disapprove of any item of bill making appropriations of money embracing distinct items, must be construed together and under section 9 Governor may veto General Appropriation Bill as a whole, or under section 10 he may veto any item or items of such bill and approve bill as to remaining items.

4. **Statutes—General Appropriation Bill Held Vetoed By Governor's Message Returned With Bill, Without Vetoing Each Item Separately (Const. Art. 4, §§ 9, 10).**

   Under Const. art. 4, § 9, providing for presenting bills to Governor for approval, and section 10, providing that Governor may disapprove of any items making appropriations of money embracing district items, General Appropriation Bill held vetoed by Governor's message returned with bill, though it did not veto each item of bill separately but referred to bill generally, and bill, not having been passed over his veto as provided by section 9, did not become law.

Note.—See, Headnote (1), American Key-Numbered Digest, States, Key-No. 73, 36 Cyc. 856 (Anno), 865; (2) States, Key-No. 27, Statutes, 36 Cyc. 958, Every, 21 C. J. Sec. 1260; (3) Statutes, Key-No. 33, 36 Cyc. 962; (4) Statutes, Key-No. 33, 36 Cyc. 962, 963.

As to power of governor to veto part only of a statute, see annotation in 55 L. R. A. 882.

As to disapproval by governor of a bill in part or approval with modifications, see annotation in 35 A. L. R. 600; 25 R. C. L. 891; 6 R. C. L. Supp. 1489.

For pleading and procedure in mandamus, see Bancroft's Code Practice and Remedies, Vol. 5, pg. 5178.

Original application by Carroll D. Erskine and another for writ of mandamus commanding Gladys Pyle, as Secretary of State, to furnish plaintiffs a certified copy of Senate Bill No. 113. Writ denied.

*Fuller & Robinson,* of Pierre, for Plaintiffs.

*Buell F. Jones,* Attorney General, and *Ray F. Drewry,* Assistant Attorney General, for Defendant.

RICE, J. [1] In this case, plaintiffs make original application to the Supreme Court for a writ of mandamus commanding the defendant, as secretary of state, to furnish plaintiffs a certified copy of Senate Bill No. 113, known as the General Appropriation Bill, for the biennium of 1927-1928. Plaintiffs have made proper application, tendered the stautory fee, and it is the duty of defendant to furnish the copy if the bill has become a law, otherwise not. Defendant refuses to furnish a copy, for the reason that, on account of a message from the Governor returning the bill to the Senate (the house in which it originated) without his signature, she is in doubt whether the bill ever became a law. The Judges of the Supreme Court, deeming themselves and also all the judges of the circuit courts in the state disqualified by reason of the appropriation for the maintenance of the judiciary being included in the bill, have, as provided by statute, appointed five members of the bar, having the qualifications required for Judges of the Supreme Court to hear and decide the case, viz.: William G. Rice, of Deadwood; James Brown, of Chamberlain; Philo Hall, of Brookings; F. D. Wicks, of Scotland; and Emmett C. Ryan, of Aberdeen, with James Brown as Presiding Judge.

As appears from the allegations of plaintiffs' application for the writ, admitted by the answer of defendant, together with an agreed statement of facts filed as part of the record in this case, the facts necessary to a determination of this case may be briefly stated as follows: Erskine is a state Senator; the plaintiff Otte is a member of the House of Representatives. At the twentieth ses-

sion of the Legislature, Erskine served as chairman of the appropriations committee of the Senate, and Otte served as chairman of the appropriations committee of the House. A joint committee of the Senate and House prepared a general appropriation bill. This bill was introduced in the Senate as Senate Bill No. 113. It was regularly passed by both the Senate and House, in conformity with the provisions of the Constitution and statutes of the state regulating the passage of bills by the Legislature. After its passage, it was duly entered in the journals of both houses, enrolled and engrossed, signed by the presiding officer of each house as required by law, and, on the 24th day of February, 1927, presented to the Governor for his action. On the 28th day of February, 1927, and within the time allowed by law, the Governor returned the bill to the Senate, where the bill originated, with the following message:
"Mr. President and Gentlemen of the Senate:

"I am herewith returning you Senate Bill No. 113, which is the General Appropriation Bill, being an act entitled 'An act appropriating money for salary and expense of the executive and judicial departments of the state, for salaries and expenses of all officers, boards and departments, for support and maintenance of the educational, charitable and penal institutions and the soldiers' home, maintenance of the state house, maintenance of the national guard, for geological surveys, and in aid of rural and consolidated schools, and maintenance of Custer State Park.'

"I cannot approve this measure for the reason that the appropriations therein provided, the special appropriations that have already been passed, and the pending necessary special appropriations will exceed by almost a million dollars the estimate annual revenue income. This is a business proposition, and we cannot continue to spend in excess of our revenue income. It is necessary for this Legislature to do one of two things; either reduce the amount of the total appropriations within the revenue income, or provide the necessary revenue to meet the appropriation expenditure. The people have delegated this power to the Legislature, and they have the only authority to work out this problem. This responsibility rests upon you; you must decide how expenses can be kept within revenue income.

"This is not an executive problem, the executive department can only administer as you provide. We owe it to the people of

our state to handle state affairs on business principles. I am re-
turning this general appropriation measure to you for your further
consideration, as I cannot approve it in its present form for the
reasons above expressed.

"I further desire to call your attention to the fact that you
have made no appropriation or provisions to carry on the fish and
game department of our state. This is a very important state ac-
tivity. Under present law, the fish and game fund reverts to the
general fund on July 1, 1927. After that date, there will be no
way in which to carry out the law in respect to the game and fish
department unless you either appropriate the funds received in
this department for that purpose, or make the necessary appropria-
tions out of the general fund to take care of this activity. Your
failure to properly provide funds to carry on the activities of the
game and fish department will destroy very many valuable prop-
erties now owned and operated for that purpose.

"I would suggest that, if you do not desire to appropriate the
income derived from the game and fish department for the use of
the preservation and propagation of game and fish, you then pro-
vide for the necessary appropriation in the general appropriation
bill so that this state activity can properly function.

"Respectfully submitted,

"W. J. Bulow, Governor."

As appears from Senate Journal, pages 839-841 of February
28, 1927, the Governor's message accompanying the return of the
bill to the Senate was read and published in the Senate Journal;
and the Senate thereafter adopted a motion to reconsider Senate
Bill No. 113 on March 2, 1927, and deferred such reconsideration
until March 3, 1927, when the bill was reconsidered by the Senate,
all of the members elect being present, the vote being determined
by the "ayes" and "nays," and the names of the members voting
for and against the bill entered upon the Senate Journal. "There
were ayes 28, nays 17." The bill, not having received an affirma-
tive vote of two-thirds of the members present, was declared lost;
and said bill was not sent to the House of Representatives, but
remained in the files of the Senate until the adjournment thereof
sine die. We deem the foregoing a sufficient statement of the facts
in the case necessary to a determination of the questions of law
involved.

The only veto power of the executive is conferred by the provisions of sections 9 and 10 of article 4 of the Constitution of the state, which are as follows:

Section 9. "Every bill, which shall have passed the Legislature, shall, before it becomes a law, be presented to the Governor. If he approve, he shall sign it, but if not, he shall return it with his objection to the house in which it originated, which shall enter the objection at large upon the journal and proceed to reconsider it. If, after such reconsideration, two-thirds of the members present shall agree to pass the bill, it shall be sent, together with the objection, to the other house, by which it shall likewise be reconsidered, and if it be approved by two-thirds of the members present, it shall become a law; but in all such cases the vote of both houses shall be determined by the yeas and nays, and the names of the members voting for and against the bill shall be entered upon the journal of each house respectively. If any bill shall [not] be returned by the Governor within three days (Sunday excepted) after it shall have been presented to him, the same shall be a law, unless the Legislature shall by its adjournment prevent its return; in which case it shall be filed, with his objection, in the office of the secretary of state, within ten days after such adjournment or become a law."

Section 10. "The Governor shall have power to disapprove of any item or items of any bill making appropriations of money embracing distinct items, and the part or parts of the bill, approved shall be law, and the item or items disapproved shall be void, unless enacted in the following manner: If the Legislature be in session he shall transmit to the house in which the bill originated a copy of the item or items thereof disapproved, together with his objections thereto, and the items objected to shall be separately reconsidered, and each item shall then take the same course as is prescribed for the passage of bills over the executive veto."

[2]    It is contended by plaintiffs that the message of the Governor accompanying the bill on its return to the Senate, as hereinbefore stated, was not a veto of the bill or of any item or items therein, and that the only power of veto as to a general appropriation bill is found in section 10 of the Constitution, above quoted, and that, by this section, the Governor's veto power extends only to an item or items of the bill, and that he cannot veto the bill as

a whole unless it be by vetoing each item of the bill separately,
and that the power of veto contained in section 10 is restrictive
and must be exercised only in the manner therein provided.  It is
contended by the defendant that the veto power of the Governor,
under the provisions the Constitution above quoted, is twofold:
First, the General Appropriation Bill in its entirety may be vetoed
by the executive in the manner provided by section 9 of the Con-
stitution; second, that, in case the Governor desires to approve the
items of the General Appropriation Bill in part and reject in part,
he may approve such items as he deems advisable, and may veto
any item or items which do not meet with his approval, in which
case, if the Legislature be in session, he shall transmit to the house
in which the bill originated a copy of the item or items thereof
disapproved, together with his objections thereto, and the items
objected to shall be separately reconsidered, and each item shall
take the same course as is prescribed for the passage of bills over
the executive veto.   In other words, defendant contends that the
provisions of section 10 are an enlargement or addition to the
power of veto contained in section 9, and that the two sections
should be considered together in determining the power of veto
lodged in the executive.  We are of the opinion that the defendant
is right in her contention.  It will be observed that section 9 of the
Constitution starts with the sweeping declaration:

"Every bill, which shall have passed the Legislature, shall,
before it becomes a law, be presented to the Governor."

The General Appropriation Bill is, beyond question, one of
the bills referred to by the framers of our Constitution, as the
word "every" includes all.   The presentation of the bill to the
Governor is not a mere idle ceremony; but, upon its receipt, the
Governor, before the bill may finally become a law, has a duty
to perform under the provisions of the Constitution.  If the bill,
in its entirety, meets with his approval, he shall sign it; if it does
not, he shall return it with his objection to the house in which it
originated, which body shall enter the objection at large upon the
Journal and proceed to reconsider the bill.   If, after reconsidera-
tion, two-thirds of the members present shall agree to the passage
of the bill, it shall be sent, together with the objection, to the
other house, by which it shall likewise be reconsidered; and, if it
be approved by two-thirds of the members present, it shall become

a law. If any bill shall not be returned by the Governor within three days (Sunday excepted) after it shall have been presented to him, the same shall be a law, unless the Legislature shall, by its adjournment, prevent its return; in which case it shall be filed, with his objection, in the office of the secretary of state, within ten days after such adjournment or become a law. It certainly cannot be contended that the General Appropriation Bill does not come under the provisions of section 9 of the Constitution, at least in so far as the passage of the bill by the Legislature, its delivery to the Governor, his action thereon, and, in case he disapproves, its return with his disapproval to the house in which it originated within three days (Sunday excepted) from his receipt thereof. Indeed, the plaintiffs, in their application for the writ of mandamus, have alleged these various steps. Unless construed with section 9, section 10 of the Constitution would be incomplete; there is no reference in this section to the passage of the bill by the Legislature in the first instance; there is no provision for its presentation to the Governor; there is no provision prescribing when the bill shall be returned by the Governor to the body in which it originated; and we are led to the inevitable conclusion that these two sections must be construed together. The precise question involved in this case, so far as we are advised, has never heretofore been decided by any court. In the Constitutions of many of the states, provisions similar to those contained in sections 9 and 10 of our Constitution are embodied in one section.

Sections 8 and 9 of article 4 of the Constitution of Wyoming are substantially identical with sections 9 and 10 of article 4 of our Constitution. The question of the veto power of the executive of items in a general appropriation bill was considered by the Supreme Court of Wyoming in State ex rel Jamison v. Forsyth, 21 Wyo. 359, 133 P. 521.

In determining whether the General Appropriation Bill is governed by section 8 of article 4 of their Constitution, which corresponds to our section 9 of article 4, the court in that case said:

"We think it clear that the above-mentioned provision of section 8 applies as well to the General Appropriation Bill as to other bills, for the section provides that, *every bill* which has passed the Legislature' shall, before it becomes a law, be presented to the

Governor; and the latter part of the section, referring to 'any bill' not returned by the Governor, must be given the same inclusive effect, for it cannot be doubted that it refers to and is intended to include every bill which is required to be presented to the Governor."

It is true, in the case under consideration by the Supreme Court of Wyoming, that the question involved was as to the power of the Governor to veto a part of an item in the General Appropriation Bill; but, in determining the question, it became necessary to construe both of said sections 8 and 9, and the court expressly holds that the General Appropriation Bill came within the provisions of section 8 of article 4, which, in substance, is the same as section 9 of article 4 of our Constitution. Such authorities as have been brought to our attention bearing in any way upon this point sustain this position. In Commonwealth v. Barnett, 199 Pa. 161, 48 A. 976, 55 L. R. A. 882, it is said that under the former Constitution of that state the Governor was compelled to approve or defeat the whole bill, but the present Constitution, giving power to veto separate items, was an "effort to increase the power and scope of his veto."

One judge dissented in this case, but he agreed with the majority on this point, and said that "prior to the adoption of the present Constitution the Governor was compelled to approve or disapprove the entire * * * bill," and to remedy this evil the veto power was extended, so that he might veto separate items.

The inclusion of the power to veto separate items certainly could not be an extension or increase of power, if it took away the power to veto the bill as a whole and permitted him to veto specific items only. The rule contended for by plaintiff would operate as a limitation and restriction, rather than as an extension and increase of power.

In Mills v. Porter, 69 Mont. 325, 222 P. 428, 35 A. L. R. 592, sometimes referred to as the "Veto Case" the origin and development of executive veto, and the extent and limits of the power under constitutional provisions similar to those of South Dakota, are extensively considered, and, while the precise point before us was not necessarily involved in that case, the court there expresses the view that a general appropriation bill made up of many separate items may be vetoed as a whole.

[3, 4]  After a careful consideration of the provisions of our Constitution, we think it clear that sections 9 and 10 of article 4 should be considered together; and that, under the provisions of section 9, the Governor is clothed with full power to veto the General Appropriation Bill as a whole; or, under the provisions of section 10, he may veto any item or items of such bill and approve the bill as to the remaining items.  We are, further, of the opinion that, by his message returning Senate Bill No. 113 to the Senate, the Governor vetoed the whole bill, and that Senate Bill No. 113 never became a law.  In stating our conclusions we are not to be understood as holding that the Governor may, by the exercise of the veto power, defeat the payment of sums fixed by the Constitution at definite amounts for specific purposes, as we do not deem that question necessary to the proper disposition of this proceeding.

An order will be entered denying the peremptory writ of mandamus prayed for and discharging the defendant from the order to show cause heretofore issued.

BROWN, P. J., and HALL, WICKS, and RYAN, JJ., concur.