524 P.2d 975

**STATE of New Mexico ex rel. William A. SEGO and William A. Sego, Petitioners,**

v.

**Robert E. KIRKPATRICK, Director, Department of Finance and Administration of the State of New Mexico, et al., Respondents.**

No. 9973.

Supreme Court of New Mexico.

July 19, 1974.

Bigbee, Byrd, Carpenter & Crout, Harry L. Bigbee, Paul D. Gerber, Andrew M. Ives, Jr., Santa Fe, for petitioners.

David L. Norvell, Atty. Gen., Thomas L. Dunigan, Thomas Patrick Whelan, Jr., Jane E. Pendleton, Andrea Buzzard, Asst. Attys. Gen., Santa Fe, for respondents.

## OPINION

OMAN, Justice.

This is an original proceeding in mandamus. We heretofore entered an alternative writ and subsequently a peremptory writ commanding the Governor, the Director of the Department of Finance and Administration and the Chief of the Division of Financial Control, Department of Finance and Administration, to permanently treat as nullities certain vetoes attempted by the Governor. We also quashed portions of the alternative writ whereby certain other vetoes were questioned, and stated we would subsequently issue this written opinion.

We are here concerned with vetoes and attempted vetoes of certain language contained in the General Appropriations Act

of 1974, commonly and hereinafter referred to as House Bill 300 (Ch. 3, Laws of 1974, passed by the Special Session; § 11–4–4, N.M.S.A.1953 (Int.Supp.1974). In accomplishing these vetoes and attempted vetoes, the Governor was acting under the authority vested and claimed to be vested in him by Art. IV, § 22, Constitution of New Mexico, which provides:

"Every bill passed by the legislature shall, before it becomes a law, be presented to the governor for approval. If he approves, he shall sign it, and deposit it with the secretary of state; otherwise, he shall return it to the house in which it originated, with his objections, which shall be entered at large upon the journal; and such bill shall not become a law unless thereafter approved by two-thirds of the members present and voting in each house by yea and nay vote entered upon its journal. Any bill not returned by the governor within three days, Sundays excepted, after being presented to him, shall become a law, whether signed by him or not, unless the legislature by adjournment prevent such return. Every bill presented to the governor during the last three days of the session shall be approved by him within twenty days after the adjournment and shall be by him immediately deposited with the secretary of state. Unless so approved and signed by him such bill shall not become a law. *The governor may in like manner approve or disapprove any part or parts, item or items, of any bill appropriating money*, and such parts or items approved shall become a law, and such as are disapproved shall be void unless passed over his veto, as herein provided. (As amended September 15, 1953.)" [Emphasis added]

It is the emphasized language of this section of our constitution with which we are particularly concerned. The disapproval by the Governor of an item or part of a bill under this authority is commonly referred to as a "line item veto." However, the word "line" does not appear in the constitutional language conferring this authority, and the use thereof in relation to a veto under this authority is misleading and has caused some confusion.

Not all of the vetoes by the Governor of items or parts of the General Appropriations Act of 1974 have been questioned by petitioner. Before considering each of the questioned vetoes or attempted vetoes, we must first resolve the threshold questions of (1) whether mandamus is an appropriate proceeding by which to test and resolve the constitutionality of the questioned vetoes and (2) whether petitioner has standing to seek such a writ for this purpose.

As to the propriety of mandamus proceedings as a means by which to test the constitutionality of the questioned vetoes, respondents contend the Governor cannot be compelled to exercise his veto power or to exercise it in a particular manner, and that an exercise of the veto power by the Governor requires the exercise of judgment and discretion, which is not a subject of judicial control. We fully agree that the exercise of the veto power requires judgment and discretion on the part of the Governor and that he cannot be compelled by the Legislature or by this Court to exercise this power or to exercise it in a particular manner. We do not agree, however, that the manner in which the Governor exercises the power is beyond judicial review or judicial control, if the manner in which it is exercised is beyond the Governor's constitutional authority. The power of veto, like all powers constitutionally conferred upon a governmental officer or agency, is not absolute and may not be exercised without any restraint or limitation whatsoever. The very concept of such absolute and unrestrained power is inconsistent with the concept of "checks and balances," which is basic to the form and structure of State government created by the people of New Mexico in their constitution, and is inconsistent with the fundamental principle that under our system of government no man is completely above the law. See Jenkins v. Knight, 46 Cal.2d 220, 293 P.2d 6 (1956).

■ We have heretofore recognized the power of the courts to pass upon the validity of a Governor's veto, although not in a mandamus proceeding. Dickson v. Saiz, 62 N.M. 227, 308 P.2d 205 (1957). This Court exercises constitutionally invested original jurisdiction in mandamus against all State officers, boards and commissions. Art. VI, § 3, Constitution of New Mexico; State ex rel. L. v. Marron, 17 N.M. 304, 128 P. 485 (1912). We have recognized mandamus as a proper proceeding in which to question the constitutionality of legislative enactments. State v. Mechem, 56 N. M. 762, 250 P.2d 897 (1952). We fail to understand why it is not a proper vehicle by which to test the constitutionality of vetoes or attempted vetoes by the Governor. Other jurisdictions have utilized it for this specific purpose. State ex rel. Cason v. Bond, 495 S.W.2d 385 (Mo.1973); Fulmore v. Lane, 104 Tex. 499, 140 S.W. 405, 1082 (1911); Commonwealth v. Dodson, 176 Va. 281, 11 S.E.2d 120 (1940).

■ The next question presented is whether petitioner has standing to seek a writ of mandamus for the purpose of testing the constitutionality of the questioned vetoes. The entire question of standing in New Mexico is somewhat in a state of confusion, and it is impossible to reconcile in principle the many decisions of this Court upon this question. For excellent articles in which the problem is discussed in some depth see Utton, Law of Standing in New Mexico, 2 N.M.L.Rev. 171 (1972); Muir, Ad Valorem Tax Status of a Private Lessee's Interest in Publicly Owned Property: Taxability of Possessory Interests in Industrial Projects Under the New Mexico Internal Revenue Bond Act, 3 N.M.L.Rev. 136, 174–180 (1973). However, as conceded by respondents, since State ex rel. Castillo Corp. v. New Mexico St. T. Com'n, 79 N.M. 357, 443 P.2d 850 (1968), and State v. Campbell, 75 N.M. 86, 400 P.2d 956 (1965), it has been clearly and firmly established that even though a private party may not have standing to invoke the power of this Court to resolve constitutional questions and enforce constitutional compli-

ance, this Court, in its discretion, may grant standing to private parties to vindicate the public interest in cases presenting issues of great public importance. There is no claim that the issues here presented are not of great public interest or importance, and we consider them of sufficiently great importance and interest to the public to grant standing to petitioner to raise and present them in these proceedings.

Respondents urge us to follow the course taken in State ex rel. Overton v. New Mexico State Tax Com'n, 81 N.M. 28, 462 P.2d 613 (1969). We decline to do so. Here, as already stated, we are presented with unquestioned issues of great public importance and interest.

Petitioner is a citizen, an elector, a taxpayer, a State Senator, a member of the Senate Finance and Rules Committee, and a member of the Legislative Finance Committee. By failing to predicate our holding as to standing on one or more of these facts, we in no way suggest that one or more thereof would not be sufficient to give petitioner standing in these proceedings. We simply elect to confer standing on the basis of the importance of the public issues involved.

Petitioner's challenges of the vetoes of Subsection L, Section 3, General Provisions, and Section 8, Contingency Clause, have now been abandoned and are no longer before us.

We shall next consider the remaining seven challenged vetoes. However, before undertaking an individual consideration of these challenged vetoes, a resolution, insofar as necessary, as to what is meant by the following quoted language from Art. IV, § 22, supra, would be helpful, since all of these vetoes and attempted vetoes were accomplished pursuant to the authority vested in the Governor by this language:

"* * *. The governor may * * * disapprove any part or parts, item or items, of any bill appropriating money, and such parts or items * * * as are disapproved shall be void unless passed over his veto, * * *."

■ The legislative power of the State of New Mexico is vested in the Legislature. Article IV, § 1, Constitution of New Mexico. Except for interest or other payments on the public debt, money shall be paid out of the treasury of the State only upon appropriations made by the Legislature, and every law making an appropriation shall distinctly specify the sum appropriated and the object to which it is to be applied. Article IV, § 30, Constitution of New Mexico. The supreme executive power of the State is vested in the Governor, whose principal function, insofar as legislatively enacted law is concerned, is to faithfully execute these laws. Article V, § 4, Constitution of New Mexico. He does, however, have the power to exercise veto control over the enactments of the Legislature to the extent that this power or authority is vested in him by Art. IV, § 22, supra. As to bills appropriating money, he clearly has the power to veto a "part or parts" or "item or items" thereof. The Legislature may not properly abridge that power by subtle drafting of conditions, limitations or restrictions upon appropriations, and the Governor may not properly distort legislative appropriations or arrogate unto himself the power of making appropriations by carefully striking words, phrases or sentences from an item or part of an appropriation.

What is meant by "part or parts" and "item or items" in the context and manner in which these terms appear in the above quoted language from Art. IV, § 22, supra, and what is the nature and purpose of the veto power conferred upon the Governor by this section of our constitution? Respondents call attention to dictionary definitions of "item" and "part" and conclude that there is considerable difference between an "item," which they say "denotes a detail of expenditure or income, a distinct sum of money," and a "part," which they say "clearly denotes any portion, division, element, contingency, fraction, fragment or piece of a bill appropriating money." In disposing of a like argument as to the difference between "item" and "part,"

as these words appear in the provisions of the Iowa Constitution relative to the partial veto of appropriation bills, the Supreme Court of Iowa stated:

"* * *. Both plaintiff and defendants emphasize the distinction between the words 'item' and 'part' or 'parts' as the same appear variously in the item veto provisions of our Constitution and of the constitutions of sister states. We are not persuaded there is any significant distinction between or among these terms, nor are we disposed to import to the word 'item' any technical meaning. * * *"

State ex rel. Turner v. Iowa State Highway Com'n, 186 N.W.2d 141, 149 (Iowa 1971).

We agree with the Iowa court. This view is consistent with the language of our opinion in Dickson v. Saiz, supra, in which the question for decision was:

"* * * whether Art. IV, § 22, of the Constitution in giving the Governor power as to bills presented to him during the last three days of a legislative session, to veto 'any part or parts, item or items, of any bill appropriating money' which he disapproves, limits him in any exercise of the power to action on general appropriation bills."

The bill there in question was not a general appropriation bill but a bill in which money was appropriated. In reaching the conclusion that "item or items, part or parts" was incorporated in our Constitution with the intent to give it broader meaning than merely "items of appropriation," we quoted in part from the brief of amici curiae as follows:

"'It [the Constitutional Convention] specifically rejected a proposal which limited the partial veto power to items of appropriations. It specifically adopted a proposal which increased the partial veto power to parts of bills of general legislation which contained incidental items of appropriation.'"

■ This and other language in our opinion in the Saiz case, as well as the re-

sult reached, indicate the purpose or purposes for the inclusion of the terms "part or parts," "item or items" and "parts or items" in our Constitution were to extend or enlarge the partial veto power thereby conferred beyond the partial veto power conferred by the constitutions of other states wherein that power is limited to (1) items of appropriation, and (2) to general appropriation bills. However, the extension or enlargement of the partial veto power to cover (1) bills of general legislation, which contain incidental items of appropriation, as well as general appropriation bills, and (2) to "items or parts" thereof in addition to "items of appropriation," does not mean there are no limitations on the partial veto of bills appropriating money.

 The power of partial veto is the power to disapprove. This is a negative power, or a power to delete or destroy a part or item, and is not a positive power, or a power to alter, enlarge or increase the effect of the remaining parts or items. It is not the power to enact or create new legislation by selective deletions. Bengzon v. Secretary of Justice, 299 U.S. 410, 57 S.Ct. 252, 81 L.Ed. 312 (1937); Fitzsimmons v. Leon, 141 F.2d 886 (1st Cir. 1944); State v. Holder, 76 Miss. 158, 23 So. 643 (1898); State ex rel. Cason v. Bond, supra; Veto Case, 69 Mont. 325, 222 P. 428 (1924); Fulmore v. Lane, supra. Thus, a partial veto must be so exercised that it eliminates or destroys the whole of an item or part and does not distort the legislative intent, and in effect create legislation inconsistent with that enacted by the Legislature, by the careful striking of words, phrases, clauses or sentences.

We now turn our attention to the challenged vetoes. We shall consider them in the order in which they were presented and argued by the parties in their respective briefs.

 The Legislature unconditionally appropriated for the State Planning Office the sum of $324,800 from the State's general fund and $712,800 from Federal funds.

This appropriation of both State and Federal funds in the total amount of $1,037,600 has not been questioned. It was followed by a contingent appropriation to this office of $150,000, which was stated as follows:

"In addition to the above appropriation, there is appropriated the sum of $150,000 from the general fund for the purpose of saving harmless the state planning office from loss of federal funds available for continuing the present operations of the office. ~~This contingent appropriation shall be disbursed only upon certification in writing by the state planning officer, approved by the director of the department of finance and administration, that federal funds to continue the agency's operation are not available; provided, however, that no funds shall be disbursed from this appropriation which would allow an operating budget greater than $1,037,600.~~"

The language shown as stricken or lined out in this and in the hereinafter quoted portions of House Bill 300 are the portions purportedly vetoed by the Governor. He gave as his reasons for this particular veto:

" * * *. This language would have had the effect of negating the contingent appropriation made [in the first quoted sentence] in that no part of the contingent appropriation could be utilized if any federal funds continued to be available to the Planning Office. I do not believe that it was the intent of the legislature to so restrict this contingent appropriation."

It is plain to us that the Legislature placed a very explicitly worded contingency upon the disbursement of this appropriation and a very explicitly worded limiting or restrictive proviso, provision or condition upon the amount of funds from this appropriation which could be disbursed. We do not question the sincerity of the Governor's effort to evaluate the intent of the Legislature, and we do not purport to know upon what he based this evaluation.

However, as already stated, we find the language to be very clear, and we have no reason to believe the Legislature meant something other than what is plainly expressed in its language. The Legislature stated that the appropriation should become effective only upon certain conditions, and the funds therefrom could be used only to the extent necessary to increase the operating budget of the agency to $1,037,600. The effect of this attempted veto was to affirmatively appropriate $150,000 without conditions and without regard to the limitation on the amount thereof which could be disbursed.

We have heretofore held that the Legislature has the power to affix reasonable provisions, conditions or limitations upon appropriations and upon the expenditure of the funds appropriated. State v. State Board of Finance, 69 N.M. 430, 367 P.2d 925 (1961); State ex rel. L. v. Marron, supra. The Governor may not distort, frustrate or defeat the legislative purpose by a veto of proper legislative conditions, restrictions, limitations or contingencies placed upon an appropriation and permit the appropriation to stand. He would thereby create new law, and this power is vested in the Legislature and not in the Governor. Therefore, the attempted veto was invalid. See the following cases from other jurisdictions in which this question has arisen and in which the decisions are in accord with our view: In Re Opinion of the Justices, 294 Mass. 616, 2 N.E.2d 789 (1936); State v. Holder, supra; State ex rel. Cason v. Bond, supra; Veto Case, supra; Commonwealth v. Dodson, supra. See also Attorney General Opinion No. 69–25, Report of the Attorney General of New Mexico.

 The next challenged veto consisted of striking language from a conditional or contingent appropriation to the State Racing Commission. This contingent appropriation and the portions thereof purportedly vetoed, follow:

"~~In the event the state scientific laboratory cannot provide~~ necessary chemical tests requiring specialized equipment, an additional $58,000 is hereby appropriated to the commission ~~to contract for such services.~~"

The Governor gave the following reasons for his attempt to veto the stricken language:

"* * * The legislature was evidently concerned with the over-all ability of our Racing Commission to detect small quantities of drugs which may affect the stamina or speed of a race horse. The appropriation of an additional $58,000 was made to up-grade the type of chemical tests to be conducted. More advanced methods of testing will of course cost additional money. House Memorial 10 requests the Racing Commission to consider the State Police laboratory as the laboratory for such tests. House Bill 300 indicates consideration should be given to the use of the new state scientific laboratory. The veto of this language will give the Racing Commission the flexibility of choosing the laboratory which will best serve the need of the people of this State."

Obviously the Governor was endeavoring to substitute his judgment for that of the Legislature as to how to best spend the $58,000 appropriated for chemical tests. Regardless of whether or not his judgment in this regard is better than that of the Legislature, the fact remains it was for the Legislature to determine the condition or contingency under which the Racing Commission could spend this appropriation for contract services. Clearly the Governor has attempted to distort the legislative will and to defeat the legislative condition precedent or the contingency upon which this appropriation rests. This attempted veto must fail for the same reasons that the attempted veto of the conditions placed by the Legislature on the appropriation to the State Planning Office must fail.

We also observe that this effort to distort and frustrate the legislative purpose, by striking portions of a complete and readily understandable sentence, is an at-

tempt to appropriate funds for an uncertain purpose by grammatically incorrect language.

■ The next challenged veto relates to the appropriation for the State Personnel Board. This appropriation was in the amount of $688,800, but was subject to the following limitation which the Governor undertook to veto:

"~~None of the above appropriation shall be spent for promulgating or filing rules, policies or plans which have significant financial impact or would require significant future appropriations to maintain without prior specific legislative approval.~~"

The reasons assigned by the Governor in his executive message for this attempted veto were:

"* * *. This is an attempt to place substantive law in House Bill 300. In addition it would severely limit the discretionary powers of the State Personnel Board. Opinions of the Attorney General indicate that requiring legislative approval of the promulgation of rules for executive agencies violates the separation of powers provision of our State Constitution. I have the assurance of the State Personnel Board that they will not take any action which will have a significant effect upon State expenditures without placing a delayed date on such action in order to give the legislature ample time to consider such action."

Respondents contend the Legislature's inclusion of the purportedly vetoed limiting language constituted:

"* * * an unconstitutional intrusion upon the executive rule making power. Rather than a limitation upon the expenditure of appropriated sums, the vetoed language in question is a requirement that the State Personnel Board seek the Legislature's approval of certain of its rules, policies or plans."

We are of the opinion that this is at best a strained construction of the legislative language. Clearly, the limitation is on the spending of funds from the appropriation for the promulgating or filing of rules, policies and plans which fall within the stated categories and not on the promulgation or filing thereof. The Legislature, which has the power and is charged with the responsibility of appropriating State money, is certainly concerned with matters which would have a significant financial impact upon or require significant future appropriations of State funds, and may properly limit the expenditure of appropriated funds for uses which will have such impact or require such future appropriations.

This veto must fail for the same reasons recited for the failure of the previously discussed attempted vetoes.

■ The next veto which has been challenged is concerned with an appropriation of $4,000 to the Construction Industries Commission for the purpose of establishing a revolving fund for the purchase and resale of literature. The Governor in no way disturbed the appropriation or the fact that "it shall be used only for the purpose of establishing a revolving fund to be used for the purchase and resale of literature." His veto went only to the following language:

"~~There shall be an amount of $4,000 to the credit of the fund at the end of each fiscal year.~~"

The Governor gave as his reason for his veto:

"The language vetoed * * * would have prohibited the Construction Industries Commission from having an inventory of literature at the end of the fiscal year. I do not believe that the legislature desired such a rigid restriction. Rather I believe that the purpose of this provision was for the Commission to maintain a revolving fund whose balance at the end of the fiscal year would be $4,000. This would include cash, receivables and inventory on hand. I will instruct this Commission to accomplish this purpose."

Respondents now contend, and we believe correctly, that the Governor's action

did not change the purpose for which the revolving fund was established. We are unable to agree with the position of petitioner that the language deleted by the Governor "thereby purportedly authorized the expenditure of $4,000 for other than the creation of a revolving fund." This appears to us to be a futile attempt to create an issue or find a difference between the positions of the Legislature and the Governor, when in fact there is no such issue or difference. This being so, the veto should stand.

The two challenged vetoes we now consider relate to each other and represent perhaps the greatest divergence in views of the parties as to the constitutional powers vested in the Governor by Art. IV, § 22, supra.

The Governor sought to veto the qualifying prepositional phrase, consisting of five words, to Subsection G, Section 3—General Provisions—of House Bill 300:

"In categories wherein specifically authorized, the department of finance and administration may approve increases in budgets of state agencies whose actual revenue from sources other than the general fund and unreverted and unemcumbered balances exceed appropriations made in the General Appropriation Act of 1974. Such actual revenues exclusive of shared revenue are hereby appropriated. In approving such budget increases, the department shall advise the legislature through its officers and appropriate committees in writing of the conditions under which the increased budget is approved and the expenditures authorized together with justification for the adjustments."

The Governor also struck the following language from the appropriations made under nine separately designated categories:

"The department of finance and administration may approve budget increases in agencies in this category pursuant to Section 3, subsection G of this act."

Comparable language was also included in that portion of the vetoed language from the "Higher Education" category, which language shall hereinafter be quoted and discussed.

Since these ten categories, including that of Higher Education, do not constitute all the categories contained in House Bill 300 and do not include all the State agencies to which appropriations were made, the effect of these attempted vetoes was to conditionally appropriate additional funds, or at least authorize their appropriation, to the agencies not included in the ten stated categories. Respondents deny this was the effect of these attempted vetoes, and assert that, even if the effect thereof be so construed, the Governor was acting within his authority in so doing. We disagree. As above stated, the power of partial veto is a power to disapprove and to thereby delete or destroy a part or item, and it is not the positive power to alter, enlarge or increase appropriations by enacting legislation through the device of selective deletions. See State v. Holder, supra; State ex. rel. Cason v. Bond, supra; Veto Case, supra; Fulmore v. Lane, supra. These attempted vetoes were constitutionally invalid.

The final veto which has been challenged and with which we are here concerned was the striking by the Governor of the following language from the category of Higher Education:

"In the event that actual revenues to state agencies in this category exceed the amounts appropriated from:

"1. federal funds; or

"2. other state funds in the form of revenues received in the sixtythird fiscal year; or

"3. other state funds in the form of receipts, earnings or balances from bond issue proceeds; or

"4. other state funds in the form of receipts or balances resulting from acts of the 1974 legislative session; or

"5. other state funds in the form of scholarships, gifts, donations, private endowments or other gra-

tuities received from an outside
source; or

"6. other state funds in the form of
increased income from auxiliary
activities;

"the department of finance and admin-
istration may approve the expenditure of
such excess funds received pursuant to
Section 3, subsection G of this act. Pro-
vided, that the department of finance and
administration may approve the tempo-
rary use of balances which shall be re-
stored to the original amount prior to
the close of the 63rd fiscal year."

The Governor gave as his reason for
striking this language:

"Article XI, Section 13 of the New
Mexico Constitution provides that the
legislature shall provide for the control
and management of each of the State's
educational institutions by a board of re-
gents. The effect of [the vetoed lan-
guage] would be to cause confusion and
to severely limit the flexibility of the
boards of regents in the control and
management of the institutions.
* * *"

The University of New Mexico, New
Mexico State University, New Mexico
Highlands University, Eastern New Mexi-
co University and New Mexico Institute of
Mining and Technology have appeared
through their respective regents as amici
curiae and, in support of respondents, urge
the validity of this veto by the Governor.
These institutions also persuasively argue
that the Legislature lacks authority to ap-
propriate Federal funds, scholarships, gifts,
donations, private endowments or other
gratuities granted or given to or other-
wise received by these institutions from
sources other than the State of New
Mexico, and lacked authority to provide
that "the department of finance and ad-
ministration may approve the temporary
use of balances which shall be restored to
the original amount prior to the close of
the 63rd fiscal year."

Contrary to what petitioner says, these
institutions do not contend that the Legis-

lature may not even consider the availabili-
ty of non-state funds in detailing the
amount of general fund appropriations to
be made to them. Their contention is that
the Legislature may not validly assume to
appropriate and consequently control the
expenditure of these funds.

We fully appreciate that this
cause arose out of challenges to vetoes and
purported vetoes by the Governor under
his partial veto powers. However, we
have elected to confer standing on petition-
er to raise issues touching on the validity
or invalidity of these vetoes and purported
vetoes because of the great public impor-
tance of the issues involved. We are of
the opinion that the public interest in and
importance of the issues involved are not
limited solely to the question of the Gover-
nor's authority to strike certain language
from House Bill 300. The question of the
validity of the Legislature's inclusion of
some of this language in its bill is also of
great public interest and importance. The
question of the authority of the Legislature
to appropriate and control non-state funds
available to these educational institutions
has been raised and argued by the parties,
and we shall decide this question as well as
the question of the validity of the Gover-
nor's action in disapproving this language
relating to the purported appropriations of
non-state funds.

As to the authority of the Gover-
nor to veto this language under his partial
veto power, we are of the opinion that this
was a proper exercise of his power. This
item or part of House Bill 300 related sole-
ly to Higher Education and to an attempt
on the part of the Legislature to authorize
additional appropriations to or expendi-
tures by the agencies in this category of
actual revenues, in the event these reve-
nues should exceed the amounts appropri-
ated from the six numbered and named
funds and the Department of Finance and
Administration should approve. However,
these additional appropriations or expendi-
tures were conditioned upon or limited by
the provisions that "the department of fi-
nance and administration may approve the

temporary use of balances which shall be restored to the original amount prior to the close of the 63rd fiscal year."

This item or part of House Bill 300 stands as a separate and distinct conditional and provisional appropriation or. authorization to expend funds, and the veto thereof operated to delete or destroy it. The deletion or destruction of this item or part does not alter the effect of the remaining parts or items, except to the extent that striking or removing a part always effects a change in the whole.

■■■■ As to the authority of the Legislature to appropriate non-state funds available to the institutions of higher learning, we are of the opinion that the Legislature lacks authority to appropriate these funds or to control the use thereof through the power of appropriation.

The powers of control and management of each of these institutions is vested in a Board of Regents. Article XII, § 13, Constitution of New Mexico; §§ 73–22–4; 73–25–3; 73–26–3 and 73–27–4, N.M.S.A. 1953 (Repl. Vol. 11, pt. 1, 1968). The Legislature has expressly recognized the authority of these institutions to receive benefits and donations from the United States and from private individuals and corporations; to buy, sell, lease or mortgage real estate; and to do all things, which in the opinions of the respective Boards of Regents, will be for the best interests of the institutions in the accomplishment of their purposes or objects. Section 73–30–15, N.M.S.A.1953 (Repl. Vol. 11, pt. 1, 1968).

In Mac Manus v. Love, Colo., 499 P.2d 609 (1972), the Supreme Court of Colorado was faced with the question of whether the Colorado Legislature had the power to appropriate Federal funds. Article III of the Colorado Constitution contains language concerning separation of the powers vested in the three departments of government, which is identical with the language of Art. III, § 1 of the New Mexico Constitution. In construing and applying this language and some of its prior decisions, the Colorado court held "that federal con-

tributions are not the subject of the appropriative power of the legislature" and the Legislature's attempt to do so was "[constitutionally] void as an infringement upon the executive function of administration." We agree.

■■■■ As already stated, our Legislature clearly has the power, and perhaps the duty, in appropriating State monies to consider the availability of Federal funds for certain purposes, but it has no power to appropriate and thereby endeavor to control the manner and extent of the use or expenditure of Federal funds made available to our institutions of higher learning. Control over the expenditure of these funds rests with the Federal government and the Boards of Regents of the respective institutions. Likewise, funds in the form of scholarships, gifts, donations, private endowments or other gratuities granted or given to the institutions, or otherwise received by them from sources other than the State of New Mexico, are not subject to appropriation by the Legislature. These funds belong to the institutions, and these institutions must make full and complete reports thereof to the Governor, who in turn must transmit these reports to the Legislature. Article V, § 9, Constitution of New Mexico. However, the fact, that these reports and the information contained therein are made available to the Legislature for its information and use in the performance of its proper legislative functions, does not confer on the Legislature the power to appropriate and thereby limit or control the use or disbursement of these funds. The matter of expenditure or disbursement of these funds rests with the Boards of Regents, subject to applicable law. Compare Gipson v. Ingram, 215 Ark. 812, 223 S.W. 2d 595 (1949); State v. State Board of Education, 33 Idaho 415, 196 P. 201 (1921); State v. Kansas State Highway Commission, 139 Kan. 391, 32 P.2d 493 (1934); Fanning v. University of Minnesota, 183 Minn. 222, 236 N.W. 217 (1931); State v. Board of Examiners of State, 121 Mont. 402, 194 P.2d 633 (1948); State v. Searle, 77 Neb. 155, 108 N.W. 1119, 109 N.W.

770 (1906); State v. Regents of University of New Mexico, 32 N.M. 428, 258 P. 571 (1927).

■ The final matter to be considered in these proceedings is respondent's contention that "a finding that the governor's veto authority has been unconstitutionally applied nullifies the Appropriation Bill [House Bill 300] as a whole." Respondents cite no authority for this contention, and we are not impressed with their arguments in support thereof. An unconstitutional veto must be disregarded and the bill given the effect intended by the Legislature. Opinion of the Justices, 306 A.2d 720 (Del.1973); State ex rel. Turner v. Iowa State Highway Commission, supra; In Re Opinion of the Justices, supra; State ex rel. Cason v. Bond, supra; Commonwealth v. Dodson, supra.

The peremptory writ of mandamus heretofore issued is affirmed.

It is so ordered.

McMANUS, C. J., and STEPHENSON, MONTOYA and MARTINEZ, JJ., concur.