STATE of North Dakota ex rel. Arthur A. LINK, in his capacity as Governor of the State of North Dakota, Petitioner,

v.

Allen I. OLSON, in his capacity as Attorney General of the State of North Dakota, and Ben Meier, in his capacity as Secretary of State of the State of North Dakota, Respondents.

Civ. No. 9673.

Supreme Court of North Dakota.

Nov. 6, 1979.

Albert A. Wolf, Sp. Counsel for the Governor of the State of N. D., Bismarck, for petitioner.

Allen I. Olson, Atty. Gen., argued, and Gary S. Helgeson, Deputy Atty. Gen., Bismarck, for respondents.

PEDERSON, Justice.

This case concerns the validity of a partial veto by Governor Link and the constitutionality of the assignment by the legislature of duties to the lieutenant governor. Governor Link has asked that we exercise original jurisdiction. We hold that the exigencies require that we accept original jurisdiction in this case. It is our conclusion that: (1) the attempted veto of § 1 of Senate Bill 2460,[1] Forty-sixth Legislative Assembly, was void and not authorized by § 80 of the North Dakota Constitution; (2) SB 2460, in its entirety, became law by the operation of § 79 of the North Dakota Constitution when, within 15 days after the end of the legislative session, a valid veto was not filed with the secretary of state; (3) that part of § 1 which assigns the duties of federal aid coordinator to the lieutenant governor is unconstitutional; and (4) the balance of SB 2460 remains operational under the direction of the federal aid coordinator appointed by the governor.

Senate Bill 2460 was passed during the Forty-sixth Legislative Assembly. It is the intent of the legislature that this law would abolish both the division of economic opportunity (a function of the governor's office) by repeal of § 54–07–06, NDCC, and the state planning division (a function of the department of accounts and purchases) by repeal of §§ 54–34.1–01, 54–34.1–02, 54–34.-1–03, 54–34.1–04, 54–34.1–05, 54–34.1–08, 54–34.1–09, and 54–34.1–15, NDCC.

Section 1 of SB 2460 created a federal aid coordinator office and assigned the duties thereof to the lieutenant governor, or to a temporary appointee of the governor "[i]f the lieutenant governor cannot serve."[2] Those responsibilities previously handled by the division of economic opportunity and the division of state planning, as well as responsibilities for handling energy management functions, were assigned to the federal aid coordinator. Approximately $20,000,000 was appropriated to the federal aid coordinator office for the July 1, 1979—June 30, 1981 biennium by § 21 of SB 2460.

Governor Link testified before a committee of the legislature, urging rejection of SB 2460 on the primary ground that designation of the federal aid coordinator office within the office of the lieutenant governor infringed upon the governor's authority to assign duties and responsibilities to the lieutenant governor, as provided in § 77 of the North Dakota Constitution. The legislature nevertheless passed SB 2460 with a conditional assignment of the duties to the lieutenant governor. Section 1 provides:

"FEDERAL AID COORDINATOR OFFICE — APPOINTMENT — LOCATION

---

1. SB 2460 has been published in Chapter 553, S.L.1979, with a footnote that § 1 thereof was vetoed—the veto being published in Chapter 685, S.L.1979. The supplement to the North Dakota Century Code has been published and the provisions of SB 2460 have been codified as Chapter 54–27.1, NDCC. Section 1 of SB 2460 is included as § 54–27.1–01, with a footnote that states: "The Attorney General in an opinion dated June 29, 1979, determined that the veto of section 1 of Senate Bill No. 2460 (S.L. 1979, ch. 553) was beyond the limit of the powers granted in section 80 of the state constitution and was therefore of no effect. Thus, section 1 became law on July 1, 1979." A previously published interim supplement omitted § 1 of SB 2460 entirely.

We note that the legislature has proposed a constitutional amendment of the entire executive article to be submitted to the people at the general election in 1980. See Chapter 711, S.L. 1979.

2. It is not readily evident why the legislature only authorized a governor's appointee to act until June 30, 1981; however, it appears from the conditional 1979 amendment of § 54–08–03 setting the salary of the lieutenant governor, that the legislature contemplates that "substantially full-time service" may be required of the lieutenant governor "pursuant to the Constitution, statute, or appropriate executive order." This amendment is only effective if the electorate at the 1980 primary election shall approve the repeal of § 39 of the Constitution. See §§ 7 and 13 of Chapter 539, S.L.1979, and Chapter 707, S.L.1979.

OF OFFICE. There is created in the office of the lieutenant governor a federal aid coordinator office. The lieutenant governor shall be the coordinator. If the lieutenant governor cannot serve as coordinator prior to June 30, 1981, the coordinator shall be appointed by and shall serve at the pleasure of the governor until June 30, 1981. The lieutenant governor, while serving as coordinator, shall receive the total salary and unvouchered expense allowance in the amount provided for the state tax commissioner during the period beginning July 1, 1979, and ending June 30, 1981. If the coordinator is appointed by the governor, the salary of the coordinator shall be set by the governor within the limits of legislative appropriation. The coordinator may employ such other persons as may be necessary and may fix their compensation within the appropriation made for that purpose. If possible, the entire federal aid coordinator office shall be housed at one location on the state capitol grounds, subject to sufficient space being made available by the director of institutions. If sufficient space is not available to house the entire office in one location on the state capitol grounds, the entire office may be housed at one location in the city of Bismarck."

Governor Link vetoed § 1 and, on June 15, 1979, by executive order, created a federal aid coordinator office in the office of the governor, apparently to be headed by the governor himself, and established three divisions within the office (a state planning division, a division of economic opportunity, and a state office of energy management and conservation) to perform the same duties assigned to the federal aid coordinator in SB 2460. Prompted by a request from a federal agency, Governor Link asked Attorney General Olson for an opinion relating to the authority of the state planning division to receive federal funds.

The attorney general responded with an opinion dated June 29, 1979, advising that the governor's partial veto of SB 2460 was void and that SB 2460, in its entirety, became effective on July 1, 1979. Subsequent to this opinion, the governor, taking issue with the attorney general's opinion, issued a new executive order appointing the lieutenant governor to head the office of federal aid coordinator in the office of the governor, and assigning the same duties as would have been assigned to him by the legislative provisions of § 1, SB 2460. The attorney general suggested that the appropriate remedy for the governor, when in disagreement with an official opinion, was to take the matter to court.

On behalf of the State of North Dakota, the governor asks this court to assume its original jurisdiction and to grant the following:

(1) A writ of prohibition preventing the attorney general from "issuing and maintaining" an attorney general's opinion declaring § 1 of SB 2460 a valid law; and

(2) A writ of mandamus requiring the secretary of state to publish the 1979 Session Laws without § 1 of SB 2460.

We issued an alternative writ of prohibition to the attorney general allowing a return to the writ and oral argument on the question whether or not he should be restrained from enforcing his opinion. Because the 1979 Session Laws and a North Dakota Century Code interim supplement had been published, we declined to issue a writ of mandamus to the secretary of state. We were not informed that a further publication of supplements was underway. See footnote 1.

Many issues were raised in the parties' briefs and on oral argument. For the sake of order, they will be addressed under the following major headings:

   I.   Jurisdiction.

   II.   Partial Veto.

   III.   Legislative Authority.

*I.  Jurisdiction.*

Our authority to issue, hear and determine original and remedial writs is derived from Article IV, Section 86, North Dakota Constitution, which provides:

"The supreme court shall be the highest court of the state. It shall have appellate jurisdiction, and shall also have original jurisdiction with authority to issue, hear, and determine such original and remedial writs as may be necessary to properly exercise its jurisdiction . . . ."

Concerning our jurisdiction, the legislature, in § 27–02–04, NDCC, has stated:

"The supreme court may exercise appellate jurisdiction only, except when otherwise specially provided by law or by the constitution. Such court, in the exercise of its original jurisdiction, may issue writs of habeas corpus, mandamus, quo warranto, certiorari, and injunction. In the exercise of its appellate jurisdiction, and in its superintending control over inferior courts, it may issue such original and remedial writs as are necessary to the proper exercise of such jurisdiction. *Such court shall exercise its original jurisdiction only in habeas corpus cases and in such cases of strictly public concern as involve questions affecting the sovereign rights of this state or its franchises or privileges.*" [Emphasis added.]

■ The power vested in this court to issue original and remedial writs, even upon a proper showing, is discretionary and cannot be invoked as a matter of right, and the court will determine for itself whether or not the case is within its jurisdiction. *Burlington Northern v. N. D. Dist. Court, etc.,* 264 N.W.2d 453 (N.D.1978); *State v. Nelson County,* 1 N.D. 88, 45 N.W. 33 (1890).

■ It is well-settled that the power of the court to exercise its original jurisdiction extends only to those cases in which the question presented is *publici juris,* wherein the sovereignty of the state, the franchises or prerogatives of the state, or the liberties of its people are affected. *State ex rel. Vogel v. Garaas,* 261 N.W.2d 914 (N.D. 1978); *Gasser v. Dorgan,* 261 N.W.2d 386 (N.D.1977); *State ex rel. DeKrey v. Peterson,* 174 N.W.2d 95 (N.D.1970). The interest of the state must be primary, not incidental, and the public, the community at large, must have an interest or right which

may be affected. *State ex rel. Vogel v. Garaas, supra; State v. Omdahl,* 138 N.W.2d 439 (N.D.1965). See also Burke, *The Prerogative Jurisdiction of the Supreme Court,* 32 N.D.L.Rev. 199.

■ Although, ordinarily, the attorney general institutes these proceedings as the legal representative of the interests of the state, his consent or refusal is not necessary in an action in which he is one of the parties defendant, and which concerns his alleged wrongful act and seeks to restrain it. *State v. Langer,* 46 N.D. 462, 177 N.W. 408 (1919).

■ In this case the governor contends that the legislative branch has infringed upon the authority granted to him by the North Dakota Constitution to assign duties to the lieutenant governor. The case also involves the extent of the power of the governor to partially veto a bill. The constitutionality of legislative action which appears to change the scope and function of the office of lieutenant governor is involved. These are issues of public concern as they affect not only the elected officials who are directly involved, but also the delicate balance of powers between the legislative and executive branches of government. Accordingly, we hold this to be a proper case for this court to exercise its original jurisdiction.

Our inquiry does not end here, however. We must also determine whether or not the case involves an actual controversy of justiciable nature, and whether or not the writ of prohibition is a proper instrument for determination of the significant public issues in the case. We do not act merely because an interesting legal question has been asked. See *Davis v. O'Keefe,* 283 N.W.2d 73 (N.D.1979).

Governor Link contended that the legislature, by enacting § 1 of SB 2460, infringed upon his executive powers. He therefore attempted to veto § 1 only, permitting the remainder to become law. The attorney general advised Governor Link that he did not have the power to veto § 1 under his constitutional authority to partially veto appropriation measures and that, accordingly,

SB 2460, in its entirety, became law. The questions raised are not abstract but reflect an actual controversy of a justiciable nature.

The court recently exercised its original jurisdiction under § 86 of the North Dakota Constitution in an analogous case, *State ex rel. Sanstead v. Freed,* 251 N.W.2d 898 (N.D.1977). That case, and this one, involves a high-level executive officer contending that the legislative branch has infringed upon the authority granted to him by the North Dakota Constitution. That case, and this one, are alike in seeking interpretation of a constitutional provision and in challenging the validity of a legislative act. This court, in *Freed, supra,* stated:

"Even a question of whether a matter has, in any manner, been committed by the Constitution to another branch of government, or whether the action of that branch exceeds whatever authority has been committed to it, is itself a delicate exercise in constitutional interpretation and is a responsibility of this Court as ultimate interpreter of the Constitution of the State of North Dakota. (Citations omitted.)" 251 N.W.2d at 904.

We hold this case does present an actual controversy of a justiciable character and warrants our exercise of original jurisdiction.

We then move to the question whether or not a writ of prohibition is a proper instrument for determination of the significant public issues in this case.

Chapter 32–35, NDCC, provides the statutory authority for a writ of prohibition. Sections 32–35–01 and 32–35–02, NDCC, state as follows:

"32–35–01. *Definition of writ of prohibition.*—The writ of prohibition is the counterpart of the writ of mandamus. It arrests the proceedings of any tribunal, corporation, board, or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person."

"32–35–02. *By whom and when issued.*—The writ of prohibition may be issued by the supreme and district courts to an inferior tribunal, or to a corporation, board, or person in any case, where there is not a plain, speedy, and adequate remedy in the ordinary course of law. It is issued upon affidavit on the application of the person beneficially interested."

In the case of *Mor-Gran-Sou Elec. Coop. v. Montana-Dakota Util. Co.,* 160 N.W.2d 521 (N.D.1968), the petitioner sought a writ of prohibition against the Public Service Commission to arrest the furnishing of electric service by MDU under a temporary certificate of convenience and necessity in a designated three-county area. In denying the request for a writ of prohibition, this court held:

"It is not an appropriate writ to revoke an order already made, for its proper use is to prohibit the doing of something, not the undoing of something already done. *Crittenden v. Municipal Court, San Diego Judicial District,* 216 Cal.App.2d 811, 31 Cal.Rptr. 280 (1963); *State ex rel. R.C. Motor Lines, Inc. v. Boyd,* 114 So.2d 169 (Fla.1959)." 160 N.W.2d at 523.

In the instant case, as in *Mor-Gran-Sou, supra,* the act to be prohibited has, in every significant respect, been accomplished prior to the request for its prohibition (i. e., the attorney general had already issued his opinion that the attempted partial veto was void and that SB 2460 became law in its entirety) and nothing further appears to be threatened by the attorney general. Moreover, the issuance of the opinion by the attorney general does not appear to have been without or in excess of the jurisdiction of the attorney general under § 54–12–01, NDCC, which provides, in relevant part, as follows:

"*Attorney general—Duties.*—The attorney general shall:

. . . . .

"6. Consult with and advise the governor and all other state officers, and when requested give written opinions on all legal or constitutional questions relating to the duties of such officers respectively;

. . . . .

"8. Give written opinions, when requested by either branch of the legislative assembly, upon legal questions;"

Even though we conclude here that a writ of prohibition is unavailable, we are not thereby prevented from deciding the significant issues raised in the case. Long ago we held that "this court, in the exercise of its original jurisdiction, may frame its process as the exigencies require. *State v. Archibald,* 5 N.D. 359, 362, 66 N.W. 234." *State v. Langer, supra,* 177 N.W. at 413.

Since the supreme court is a court of record (see § 27–01–01, NDCC), the declaratory judgment procedure found in § 32–23–01, NDCC, is available to this court, and we will proceed pursuant thereto.

## II. *Partial Veto.*

■ The governor's authority to partially veto legislation in this state is found in § 80 of the Constitution of North Dakota, which provides as follows:

"Section 80. The governor shall have power to disapprove of any *item or items or part or parts of any bill making appropriations of money or property embracing distinct items,* and the part or parts of the bill approved shall be the law, and the item or items and part or parts disapproved shall be void, unless enacted in the following manner: . . ." [Emphasis added.]

If the bill is not one "making appropriations of money or property embracing distinct items," the bill must be approved or disapproved in total. *State v. Olson,* 65 N.D. 561, 260 N.W. 586 (1935).

■ An "appropriation" is the "setting apart from the public revenue of a definite sum of money for the specified object in such a manner that the officials of the government are authorized to use the amount so set apart, and no more, for that object." *State v. Holmes,* 19 N.D. 286, 123 N.W. 884, 886–887 (1909); *Campbell v. Towner County,* 71 N.D. 616, 3 N.W.2d 822, 825 (1942).

■ Oklahoma's constitution, which authorizes a partial veto where the bill makes "appropriations of money *embracing distinct items,*" [emphasis added] has been interpreted to apply only to those bills where more than one item of appropriation was made. *Regents of State University v. Trapp,* 28 Okl. 83, 113 P. 910 (1911). The Idaho court has similarly interpreted its constitution:

"The language of the section says that the power of partial veto applies to 'any bill making appropriations of money *embracing distinct items.*' This language seemingly excludes bills making only one appropriation embracing one item." *Cenarrusa v. Andrus,* 99 Idaho 404, 582 P.2d 1082, 1089 (1978). [Emphasis added.]

We follow the above decisions of Oklahoma and Idaho and conclude that § 80 applies to any bill whenever more than one item of appropriation is made.

Senate Bill 2460 qualifies as a bill appropriating money for more than one distinct item. Sections 21 and 22 of SB 2460 make appropriations for the federal aid coordinator office and for the natural resources council, and both sections make appropriations for distinct items within those offices.[3]

Governor Link's veto message applied to § 1 of SB 2460 in its entirety. The attorney general argues that § 1 does not constitute an "item or items or part or parts" of a bill so as to make it the subject of a partial veto. The governor, on the other hand, contends that the inclusion of the terms "part or parts" broadens his partial veto power beyond "item or items" of appropriations to cover substantive provisions in appropriation bills.

The question we must answer is: "Does § 1 constitute an 'item or items or part or parts' within the intent of § 80 of our constitution?"

■ In a 1965 case this court, relying upon *State v. Hall,* 35 N.D. 34, 159 N.W. 281 (1916), said:

substantive provisions which relate to an entirely distinct activity. See § 62 of the North Dakota Constitution.

---

3. It may very well be advisable for the legislature to reexamine the practice of commingling appropriation items for a specific activity with

"The questions must be answered, if possible, from the language of the constitutional provision itself but, if the language is ambiguous or the answer doubtful, then the field of inquiry is widened and rules applicable to construction of statutes are to be resorted to. In fact, a wider field of inquiry for information is proper where needed in construing constitutional provisions than legislative enactments." *Newman v. Hjelle*, 133 N.W.2d 549, 556 (N.D.1965).

For general canons of construction of a constitutional provision see *State v. Robinson*, 35 N.D. 417, 160 N.W. 514 (1916). When an ambiguity exists in a statute, we are authorized to consider the consequences of a particular construction. Section 1–02–39, NDCC. We may do the same here where the ambiguity is in the constitution.

The North Dakota Supreme Court in *State v. Olson, supra*, stated that the purpose of § 80 of the North Dakota Constitution is to prevent "logrolling," the practice of attaching riders of objectionable legislation to general appropriation bills in order to force the governor to veto the entire bill or approve the act with the objectionable parts intact. With the enactment of § 80, the governor could disapprove an item that was obnoxious and yet permit the proper items to stand. When the court included the word "provisions" in saying that "Section 80 merely extends the power of the Governor over legislation by giving him the right to pick out items and provisions in an appropriation bill which he disapproves," that was mere dictum. *State v. Olson, supra*, 260 N.W. at 589.

The North Dakota Supreme Court has not had an opportunity to interpret the extent of the governor's veto power under § 80. In this case it is helpful to look at case law from other states with similar partial veto language to see how these courts interpreted the extent of the veto power of their governors.

The language of the New Mexico Constitution on partial veto power is almost identical to North Dakota's. Article IV, Section 22, Constitution of New Mexico, provides as follows:

"The governor may in like manner approve or disapprove *any part or parts, item or items,* of any bill appropriating money, and such parts or items approved shall become a law, and such as are disapproved shall be void unless passed over his veto, as herein provided." [Emphasis added.]

The New Mexico Supreme Court in the case of *State ex rel. Sego v. Kirkpatrick*, 86 N.M. 359, 524 P.2d 975, 981 (1974), concluded that the inclusion of such words, "part or parts," "item or items," was to enlarge the governor's veto power to cover:

"(1) bills of general legislation, which contain incidental items of appropriation, as well as general appropriation bills, and (2) to 'items or parts' thereof, in addition to 'items of appropriation,' . . ."

However, the Pennsylvania Supreme Court in *Commonwealth v. Barnett*, 199 Pa. 161, 48 A. 976, 55 L.R.A. 882 (1901), said that item or items and part or parts are synonyms. This has been followed by Arizona in *Callaghan v. Boyce*, 17 Ariz. 433, 153 P. 773 (1915), and California in *Wood v. Riley*, 192 Cal. 293, 219 P. 966 (1923). See also *Erskine v. Pyle*, 51 S.D. 262, 213 N.W. 500 (1927).

The court in *Kirkpatrick, supra*, concluded that there were definite limitations on the governor's partial veto power:

"The power of partial veto is the power to disapprove. This is a negative power, or a power to delete or destroy a part or item, and is not a positive power, or a power to alter, enlarge or increase the effect of the remaining parts or items. It is not the power to enact or create new legislation by selective deletions. [Citations omitted.] Thus, a partial veto must be so exercised that it eliminates or destroys the whole of an item or part and does not distort the legislative intent, and in effect create legislation inconsistent with that enacted by the Legislature, by the careful striking of words, phrases, clauses or sentences." 524 P.2d at 981.

"The Governor may not distort, frustrate or defeat the legislative purpose by a

veto of proper legislative conditions, restrictions, limitations or contingencies placed upon an appropriation and permit the appropriation to stand." 524 P.2d at 982.

In Iowa, the governor "may approve appropriation bills in whole or in part, and may disapprove any item of any appropriation bill; and the part approved shall become a law." Article 3, Section 16, Constitution of Iowa. The Iowa Supreme Court concluded that the governor may use partial vetoes only in appropriation bills, but is not limited to matters therein which appropriate money. However, the provision vetoed must be separate and severable, and not a condition on an appropriation. *State ex rel. Turner v. Iowa State Highway Com'n*, 186 N.W.2d 141 (Iowa 1971). The governor cannot veto integral parts of an appropriation, which parts act as a qualification or condition upon the appropriation without vetoing the entire appropriation itself. *Welden v. Ray*, 229 N.W.2d 706 (Iowa 1975).

In Ohio, the governor "may disapprove any item or items in any bill making an appropriation of money . . . ." Section 16, Article II, Ohio Constitution. Even though Ohio's partial veto provision does not include the words "part or parts," the Ohio Supreme Court determined that it does not prevent the governor from vetoing only money appropriations in appropriation bills. Rather, "we conclude that those provisions in an appropriation bill which are separate and distinct from other provisions in the same bill, insofar as the subject, purpose, or amount of the appropriation is concerned, are items within the meaning of Section 16, Article II of the Ohio Constitution." *State ex rel. Brown v. Ferguson*, 32 Ohio St.2d 245, 291 N.E.2d 434, 438 (1972).

In Virginia, the governor "shall have the power to veto any particular item or items of an appropriation bill . . . ." Art. 5, § 6, Virginia Constitution. The Virginia Supreme Court concluded that the term item "refers to something which may be taken out of a bill without affecting its other purposes or provisions." *Common-wealth v. Dodson*, 176 Va. 281, 11 S.E.2d 120, 124 (1940). "We think it is plain that the veto power does not carry with it power to strike out conditions or restrictions." 11 S.E.2d at 127.

The view expressed in the above cases is that the governor may veto items or parts in appropriation bills that are substantive, if the provisions are related to the vetoed appropriation and are so separate and distinct that removing them does not affect the bill's primary purpose. A corollary to this is that one may not veto conditions or restrictions on appropriations without vetoing the appropriation itself, as this would distort the legislature's intent.

In contrast to this limitation placed on the governor's veto power in these states, Wisconsin has interpreted its partial veto provision much more liberally. Article V, Section 10, of the Wisconsin Constitution provides as follows:

"Appropriation bills may be approved in whole *or in part* by the Governor . . . ." [Emphasis added.]

In *State ex rel. Sundby v. Adamany*, 71 Wis.2d 118, 237 N.W.2d 910 (1976), the Wisconsin Supreme Court concluded that the governor's partial veto power may be utilized to veto any portion of an appropriation bill, even if the result effectuates a change in legislative purpose, as long as the portion vetoed is separable and the remaining provisions constitute a complete and workable law.

We note that Wisconsin's partial veto provision is not worded like North Dakota's, and that this interpretation would allow the governor to use his veto power to, in essence, legislate. We conclude that § 80 does not contemplate such a liberal interpretation. Furthermore, we have found no cases interpreting a state constitutional provision to permit a partial veto which would render the remaining law incomplete and unworkable. Senate Bill 2460 is not a complete and workable act without § 1.

We hold that the governor, in exercising his partial veto power, may only veto items or parts in appropriation bills that are

related to the vetoed appropriation and are so separate and distinct that, after removing them, the bill can stand as workable legislation which comports with the fundamental purpose the legislature intended to effect when the whole was enacted. He may not veto conditions or restrictions on appropriations without vetoing the appropriation itself.

This interpretation of the governor's veto power comports with the practical construction North Dakota governors have placed on § 80 of our constitution.

The first partial vetoes of bills were in 1903. The governor approved SB 103 "except as to the part or parts appropriating money for the purchase of pure bred stock . . . ," and approved SB 22 "except the item appropriating four thousand dollars for beds, bedding and furniture . . . ." Chapters 10 and 17, Session Laws, 1903. There were partial vetoes of money items in bills throughout many of the following legislative sessions. In 1965, Governor Guy vetoed a section of an appropriation bill which was substantive. Section 4 of SB 1 was vetoed, which section permitted the Board of Higher Education to authorize the expenditure of funds included within any line item of the total operating budget for any purpose authorized by any other line item. See Chapter 1, Session Laws, 1965. This section was separate and distinct from the rest, and deleting it did not affect the bill's purpose or other provisions.

In 1971, Governor Guy vetoed § 11 of HB 1063, which provided:

> "The advisory board of the Bank of North Dakota shall constitute the mortgage insurance fund board. . . ."

Governor Guy stated that he was vetoing this provision "using the authority given me in the North Dakota Constitution under Section 80, and as substantiated by a New Mexico Supreme Court decision in 1957."[4]

Chapter 612, Session Laws, 1971. Section 11 appears to be a separate and distinct provision which can be removed from the act without affecting the remaining provisions or the fundamental purpose of the legislation. We note, however, that neither of Governor Guy's 1965 and 1971 vetoes were challenged.

In 1977 Governor Link vetoed the line item appropriation for the REAP computer facilities, and vetoed § 5 of HB 1002, which directed how the line item appropriation should be expended. The remainder of the bill was not affected by this veto. See Chapters 2 and 582, Session Laws, 1977.

We can see from these examples that governors have, in the past, vetoed provisions in bills other than merely money items of appropriation when substantive provisions were commingled with line items of appropriation in one bill.

█ In the instant case, Governor Link, in vetoing § 1 in its entirety, vetoed the language which created the federal aid coordinator office, as well as the language which placed the position of federal aid coordinator in the office of the lieutenant governor. We are left with a bill which refers to a nonexistent office, as the federal aid coordinator office is not created by legislative enactment in any of the remaining sections. Section 1 is not a separate and distinct provision which can be removed without affecting the others, as the bill which remains is not workable legislation and the primary purpose of the bill to create a federal aid coordinator office is destroyed. Consequently, we hold that the governor's veto of § 1 was not authorized by § 80 of the North Dakota Constitution.

█ What is the effect of the governor's unauthorized veto of § 1?

---

4. It would appear that he was speaking of *Dickson v. Saiz*, 62 N.M. 227, 308 P.2d 205 (1957). In this case, the New Mexico Supreme Court stated that their governor's partial veto power could reach parts of bills of general legislation which contained incidental items of appropriation. We note that the court, in distinguishing North Dakota's partial veto provision from New Mexico's, stated that North Dakota's was more restrictive. We also note that the quoted partial veto provision which was supposedly "the exact language in North Dakota," omitted the words "part or parts" completely.

We are influenced by the reasoning used by courts of other states which have discussed the scope and effect of judicial review of executive vetoes.

The New Mexico Supreme Court in *State ex rel. Sego v. Kirkpatrick, supra*, stated:

"The final matter to be considered in these proceedings is respondent's contention that 'a finding that the governor's veto authority has been unconstitutionally applied nullifies the Appropriation Bill [House Bill 300] as a whole' . . . An unconstitutional veto must be disregarded and the bill given the effect intended by the Legislature. [Citations omitted.]" 524 P.2d at 987.

The Iowa Supreme Court in *Welden v. Ray, supra*, stated:

"The attempted vetoes by the Governor are beyond the scope of the item-veto amendment and are of no effect." 229 N.W.2d at 715.

The Virginia Supreme Court in *Commonwealth v. Dodson, supra*, held that the unconstitutional vetoes did not invalidate the budget bill as a whole, and discussed the effect that the holding that an invalid veto destroys the whole bill would have:

"If this be true, then no attack on a veto, however patently unconstitutional, can succeed, for the restoration of the vetoed item would of itself invalidate the bill to which it was restored. Few would assail a veto in an appropriation bill when they must fail if they fail and fail if they succeed." 11 S.E.2d at 134.

Other courts have held that invalid partial vetoes do not invalidate the whole bill, based upon their constitutional provisions which, like North Dakota's, permit a bill to become a law without the governor's approval. See *Porter v. Hughes*, 4 Ariz. 1, 32 P. 165 (1893); *Fergus v. Russel*, 270 Ill. 304, 110 N.E. 130 (1915); *Fulmore v. Lane*, 104 Tex. 499, 140 S.W. 405 (1911).

The Wyoming Supreme Court in *State v. Forsyth*, 21 Wyo. 359, 133 P. 521, 531 (1913), stated:

". . . under our Constitution, which provides that a bill received too late to be returned to the Legislature within the specified time will become a law unless disapproved within the period limited for that purpose after adjournment, an unauthorized disapproval would not defeat the bill."

In *Regents of State University v. Trapp, supra*, the Oklahoma Supreme Court held that as their constitution required that the governor give his affirmative approval before a bill could become law, his approval of the bill "except as to certain items" amounted to a qualified approval which was not permitted, and resulted in the failure of the bill in its entirety.

Section 79 of the North Dakota Constitution provides that every bill passed by the legislative assembly shall be presented to the governor. He may approve the bill, disapprove it and return it with his objections, or he may choose not to act on the bill, in which case it is considered approved if not returned within three days. No affirmative action on his part is required. If the legislative assembly adjourns so that the bill cannot be returned, it is considered approved unless he files the bill with his objections to it in the office of the secretary of state within fifteen days after adjournment.

Section 79 applies equally to appropriation bills. Where the governor considers an appropriation bill after adjournment, the bill is considered approved unless he disapproves any item therein and files his objections in the secretary of state's office. *State v. Olson, supra*.

In the instant case, the governor vetoed only § 1 of SB 2460. He made no comment on the other 23 sections as he apparently had no intention of disapproving them. No affirmative action on his part is necessary for these sections to become law as § 79 provides that after adjournment a bill "shall be a law unless he shall file the same with his objections . . . ." He made no objections to §§ 2 through 24.

As to § 1, we have determined that the attempted veto was unauthorized and we therefore hold that the veto has no effect.

Section 1 remains a part of SB 2460. We similarly declared an attempted partial veto void in *State v. Dewing*, 131 N.W.2d 434 (N.D.1964).

### III. *Legislative Authority.*

Having determined that the governor's attempted veto was unauthorized and SB 2460 became law in its entirety, we must now determine whether or not that portion of § 1 which assigns the position of federal aid coordinator to the lieutenant governor is constitutional.

We address only the narrow issue of the constitutionality of this part of § 1 as neither party contends that the creation of a federal aid coordinator office is unconstitutional, and neither party raises the issue of whether or not the lieutenant governor can receive the salary as designated in § 1.

The governor asserts that under §§ 71 and 77 of the North Dakota Constitution only the governor can assign duties to the lieutenant governor.

Section 71 vests the executive power in the governor. Section 77 provides as follows:

"Section 77. The powers and duties of the lieutenant governor shall be to serve as president of the senate, and he may, when the senate is equally divided, vote on procedural matters, and on substantive matters if his vote would be decisive. *Additional duties shall be prescribed by the governor. . . .*" [Emphasis added.]

By assigning the duties of the federal aid coordinator to the lieutenant governor, the legislature has changed the office of the lieutenant governor from a part-time position to a full-time position. It has also changed the nature of the position. Historically, the lieutenant governor has served as president of the senate with additional duties as prescribed by the governor. We recognize that the legislature has assigned certain duties to the lieutenant governor in the past, but these were legislative duties that went hand-in-hand with his position as president of the senate. (Example: Chairman of the Interim Committee on Audits

and Fiscal Review, Ch. 352, S.L. 1963.) Senate Bill 2460, on the other hand, assigns to the lieutenant governor a full-time executive office totally unrelated to his legislative duties. The underlying issue we must resolve then is whether or not SB 2460 impermissibly interferes with the constitutionally created office of the lieutenant governor.

This court has provided a guideline upon which to resolve questions concerning the constitutionality of legislative enactments:

"Under the Constitution of this state 'all governmental sovereign power is vested in the Legislature, except such as is granted to the other departments of government, or expressly withheld from the Legislature by constitutional restrictions.'"

"The only test of the validity of an act regularly passed by the Legislature is whether it violates any of the express or implied restrictions of the state or federal Constitution." *State v. First State Bank*, 52 N.D. 231, 202 N.W. 391 (1925).

Section 77 of the North Dakota Constitution provides that "[a]dditional duties [for the lieutenant governor] shall be prescribed by the governor." Section 83 of the North Dakota Constitution provides as follows:

"The powers and duties of the secretary of state, auditor, treasurer, superintendent of public instruction, commissioner of insurance, commissioners of railroads, attorney general and commissioner of agriculture and labor shall be prescribed by law. . . ."

We have adopted the general principle of statutory interpretation that "mention of one thing implies exclusion of another." *Dixon v. Kaufman*, 79 N.D. 633, 58 N.W.2d 797 (1953). Both of the above constitutional provisions imply that the legislature is not authorized to assign duties to the lieutenant governor.

The office of the lieutenant governor is a constitutional office and, as such, must be treated differently than an office created by statute. In *State v. Douglas*, 33 Nev. 82, 110 P. 177, 180 (1910), the Nevada

Supreme Court held that the separation-of-powers doctrine imposes some limitation on the legislature when dealing with constitutional officers:

"Every constitutional officer derives his power and authority from the Constitution, the same as the Legislature does, and the Legislature, in the absence of express constitutional authority, is as powerless to add to a constitutional office duties foreign to that office, as it is to take away duties that naturally belong to it. . . . .

"It is well settled by the courts that the Legislature, in the absence of special authorization in the Constitution, is without power to abolish a constitutional office or to change, alter, or modify its constitutional powers and functions. [Cites omitted.]"

As we stated earlier, this assignment of duties to the lieutenant governor changes the nature of the office from a part-time office with legislative duties to a full-time office with executive duties. To uphold this enactment would be to allow the legislature to seriously modify a constitutionally created office and would be ignoring an express provision in our constitution that the *governor* shall prescribe additional duties to the lieutenant governor. We express no view as to any implied limitations upon the governor to materially change the function of the lieutenant governor by assignment of duties under § 77 of the North Dakota Constitution. We hold that that portion of § 1 of SB 2460 which assigns the position of federal aid coordinator to the lieutenant governor is unconstitutional.

In invalidating only part of a bill this court has stated the following: ". . . if a legislative act be in part unconstitutional, the valid portion shall stand, unless the result be one not contemplated or desired by the Legislature." *Baird v. Burke County,* 53 N.D. 140, 205 N.W. 17, 22 (1925).

The legislature has demonstrated an intent that the provisions of SB 2460 shall remain viable even though its designation of the lieutenant governor as federal aid coordinator cannot stand. We glean this intent from that language in § 1 which states: "If the lieutenant governor cannot serve as coordinator prior to June 30, 1981, the coordinator shall be appointed by and shall serve at the pleasure of the governor until June 30, 1981." Clearly, the legislature's primary purpose was to create the office of federal aid coordinator with the duties and responsibilities therein, and not to appoint any particular person to serve. The invalid provisions can be stricken without disturbing this purpose.

Accordingly, we hold that SB 2460, exclusive of that unconstitutional portion of § 1, remains viable and is currently operative under the direction of the federal aid coordinator as appointed by the governor.

ERICKSTAD, C. J., SAND, J., and NORBERT J. MUGGLI and NORMAN J. BACKES, District Judges, concur.

PAULSON and VANDE WALLE, JJ., deeming themselves disqualified, did not participate. District Court Judges NORBERT J. MUGGLI and NORMAN J. BACKES sat in their stead.