255 P.2d 673

CARPER et al. v. BOARD OF COUNTY
COM'RS OF EDDY COUNTY et al.

No. 5547.

Supreme Court of New Mexico.

April 6, 1953.

N. Randolph Reese, Hobbs, for appellants.

Neil B. Watson, William M. Siegenthaler and Donald S. Bush, Artesia, for appellees.

COORS, Justice.

The important question for determination in this case is whether a petition presented to the Board of Commissioners of Eddy County to call an election to obtain necessary authorization from the voters for constructing two separate hospitals with isolation wards, pursuant to Laws 1947, Chapter 148, was legally sufficient, or whether it was fatally defective on the ground that it combines two separate propositions into one question.

At the March 3, 1952 meeting of the Board of County Commissioners of Eddy County, a petition signed by sufficient legally qualified electors of Eddy County was presented to the board in these words:

"Petition

"To the Board of County Commissioners of Eddy County, New Mexico.

"We, the undersigned qualified electors of Eddy County, New Mexico, hereby petition the Board of County Commissioners of Eddy County, New Mexico, to call an election in Eddy County, New Mexico, to take a vote on the one joint question or proposition of constructing two hospitals in and for Eddy County, New Mexico, each with an isolation ward, and equipping each hospital, and acquiring the land for each hospital, by means of the issuance of bonds of Eddy County, New Mexico, in the amount of $1,000,000.00 for the construction in Carlsbad, New Mexico, of one hospital with isolation ward, equipping such hospital, and acquiring the land therefor, and in the amount of $600,000.00, for the construction in Artesia, New Mexico, of one hospital with isolation ward, equipping such hospital, and acquiring the lands therefor.

"Wherefore, We respectfully pray that an election be called by Your Honorable Body as by the Statutes and Constitution made and provided."

Ten days later, on March 13, the Board of County Commissioners "disapproved" the petition upon advice of the District Attorney and refused to call an election. Six days later the plaintiffs, who are the appellees in this appeal, on behalf of themselves and others similarly situated, initiated a proceeding in mandamus to compel the Board of County Commissioners to call the election.

The defendants base their refusal to act on the petition upon the advice received from the District Attorney that the petition is void.

The trial court issued its alternative writ of mandamus directing that the Board either make the proper order calling the special election prayed for in the petition, issuing the necessary proclamation therefor upon such notice as the law requires, or in the alternative, that the Board and its members appear before the Court to show why such action was not taken.

No steps were taken by the Board to call the election in pursuance of the writ and the question in due course came before the Court for hearing. The Board members defended their position at the hearing upon the ground that action pursuant to the petition would cause them to violate Article 9, Section 10, of the New Mexico Constitution as well as the statutory law of this state for the reason that the election as called for by the petition would deprive the voters of their constitutional right to object to or approve of the construction of either hospital separately. The defendants further took the position that they could not on their own initiative present the question as to each hospital to the voters separately since they were bound by the petition to submit the matter as one question under our holding in Dickinson v. Board of Commissioners of De Baca County, 1929, 34 N.M. 337, 281 P. 33, and that as a consequence, under their oath to uphold the Constitution, their only legal course of action available was to disapprove the petition.

The District Court concluded that the petition set out one joint proposition only and that an election should be called in accordance with the provisions of Chapter 148, Laws of 1947. It accordingly issued thereafter its Peremptory Writ of Mandamus ordering defendants to call the election submitting the matter of constructing and equipping the two hospitals, at Carlsbad and at Artesia respectively, to the voters. Defendants have appealed from that judgment, action upon the petition having been stayed until the cause is finally determined in this Court.

Article 9, Section 10 of the New Mexico Constitution provides:

"No county shall borrow money except for the purpose of erecting necessary public buildings or constructing or repairing public roads and bridges,

and in such cases only after the proposition to create such debt shall have been submitted to the qualified electors of the county who paid a property tax therein during the preceding year and approved by a majority of those voting thereon. No bonds issued for such purpose shall run for more than fifty years."

Hospitals were declared to be necessary public buildings by provisions of Laws 1947, Chapter 20, Section 1. That the Legislature could thus designate hospitals as necessary public buildings as that term is used in Section 10 of Article 9 of the New Mexico Constitution was established in Board of County Commissioners of Bernalillo County v. McCulloh, 1948, 52 N.M. 210, 195 P.2d 1005. Laws 1947, Chapter 148, Section 1, further provides that "All counties shall have the power to construct, purchase, own, maintain and operate hospitals, including isolation wards, and to purchase the necessary land therefor."

Section 4 of Chapter 148, Laws 1947, reads thus:

• "Whenever a petition signed by not less than two hundred (200) qualified electors of any county in this state shall be presented to the board of county commissioners of the particular county, asking that a vote be taken on *the question or proposition of constructing or purchasing a hospital and isolation ward and acquiring the land therefor,* setting forth in general terms the object of such petition and the amount of bonds asked to be voted for, it shall be the duty of the board of county commissioners of such county * * * within ten (10) days after the presentation, to call an election to be held within sixty (60) days thereafter in such county, and shall give notice of such election by publication once a week for at last three (3) consecutive weeks in any newspaper published in such county, which notices shall set forth the time and place of holding such election, *the hospital and isolation ward proposed to be built or purchased,* and the land to be acquired, and which bonds are to be voted for. * * *"* (Emphasis ours.)

 It may be noted that the foregoing provisions of the statute were passed in light of the holding of this court in Lanigan v. Town of Gallup, 1913, 17 N.M. 627, 131 P. 997, wherein we declared that while two propositions may be submitted at the same election, or upon the same ballot, each proposition must stand alone so that the voter has an opportunity to express his choice upon each question independent of the other. The language of the 1947 act leaves no doubt that the Legislature regarded the construction of *each* hospital, with or without an isolation ward, as a separate and independent proposition.

Dickinson v. Board of Commissioners of De Baca County, supra [34 N.M. 337, 281 P. 34], held that a petition filed under Code 1915, Section 1159, asking that a vote be taken upon two bond issues, one for a courthouse and the other for jail purposes, did not authorize the submission thereof by ballot as a joint proposition, and an election at which the ballot submitted the proposition as, for or against "courthouse and jail bonds", was declared null and void. The section of the statutes involved in the Dickinson case, which is carried forward as Section 15–4604 in N.M. Statutes Annotated, 1941 Compilation, is in all material respects identical with the provision of the 1947 act primarily involved herein. The section under consideration in the Dickinson case read:

"Whenever a petition signed by not less than two hundred (200) qualified electors of any county in this State shall be presented to the board of county commissioners, asking that a vote be taken on the question or proposition of building *a court house, or jail, or a bridge*, setting forth in general terms the object of such petition and the amount of bonds asked to be voted for, it shall be the duty of the board of county commissioners of such county to which said petition may be presented, within ten (10) days after the presentation, to call an election to be held within thirty (30) days thereafter in such county, and shall give notice of such election by publication for at least three (3) consecutive weeks in any newspaper published in such county, which notices shall set forth the time and place of holding such election, *the court house, jail or bridge* proposed to be built, and which bonds are to be voted for: * * *." (Emphasis ours.)

It does not require straining of the imagination to conclude that the 1947 provision relating to county hospitals was consciously patterned after the above provision.

In the instant case, where two hospitals are proposed to be built and different amounts of bonds are proposed to be sold for each and the hospitals to be built therewith are to be located in different towns, some thirty-five miles apart, at least four possible ways of voting exist. Some voters might wish to vote "yes" for each of the hospitals to be built at Artesia and at Carlsbad, some might wish to vote "no" for each hospital; some might wish to vote "yes" for the hospital at Carlsbad and "no" for Artesia, and still others might want to vote "yes" for Artesia and "no" for Carlsbad. Since it is the voter's money as a taxpayer which will eventually be used to retire the bonds and to pay the interest accruing thereon, he should be allowed a free choice in determining whether and to what extent he wants his property encumbered by a

bond issue. The petition, unfortunately, does not permit this free choice. The voter must either vote in favor of both hospitals or he must vote against both hospitals. He may feel that one county-built hospital will adequately serve the county and consequently may not wish to vote for both, and if he feels that way about it he should be permitted to make his ballot choice. Furthermore, he may feel that because of other already existing facilities the county hospital should be located in either one town or the other and he should likewise be enabled to make his choice there.

■ We did observe in the Dickinson case that "It is our opinion that article 9 of our Constitution and section 1159 of the 1915 Codification are sufficiently broad to permit the submission of bond issues for a courthouse and jail either jointly, as one question, or separately." Unfortunately, however, for appellees here, this observation was not essential to the holding in that case. The essence of the holding there rested upon the fact that *the county commissioners* had combined a petition for the issue of bonds to the amount of $30,000 for court house purposes and to the amount of $7,500 for jail purposes into a single question. We held that the County Commissioners are not the persons empowered by law to select the method, but that it lies with those who prepare and sign the petition to choose by the language they employ

whether they are requesting the submission of a joint or two separate propositions. Furthermore, it should be observed that in the Dickinson case the petition was one for construction of a court house and a jail, which usually go hand in hand as one single unit; it was not a petition for the construction of two separate court buildings or of two separate jails which we were considering. It was the case of *a* court house with *a* jail. The over-all test, says the annotator in 4 A.L.R.2d 617, 630, "is the existence of a natural relationship between the various structures or objects united in one proposition so that they form, as the courts express it, 'but one rounded whole.' " In the instant case the petition itself calls for two distinct hospital structures, each of which may be constructed with or without isolation wards under the authority of the 1947 act, just as under the older statute, as we intimated in the Dickinson case, it would be possible to build *a* court house with or without a jail pursuant to a properly prepared and approved petition therefor, followed of course by due consummation of all further necessary steps, in accordance with the statute and constitutional requirements.

■ That the choice of language by the Legislature in Chapter 148, Laws 1947, and in the statutes after which it is patterned should prevent a submission of the question of two hospitals as one joint proposition, assuming that such a submission

would not violate constitutional requirements, may arguably be regretted in the individual case when the over-all purpose of supplying adequate hospital service within reasonable distance and reach from all parts of the county is considered, but there is no basis for construction where the legislative language and intent are plain. Regents of Agricultural College of New Mexico v. Vaughn, 1904, 12 N.M. 333, 78 P. 51. We must presume that the Legislature knew just what it was doing when it passed the act. Section 4 of the 1947 statute makes it plain that the voters are entitled to express their opinion upon "the question or proposition" and that the election called shall entitle them to vote upon whether "a hospital" is to be constructed or purchased. The language is singular, not plural.

As part of the argument presented in the companion case of Kiddy v. Board of County Commissioners of Eddy County, 57 N.M. 145, 255 P.2d 678, the case of White v. Board of Education of Silver City, 1938, 42 N.M. 94, 75 P.2d 712, 715, is urged before this court in defense of the proposition that the petition presents a single and not a dual proposition for submission to the voters. In the White case, to be sure, there is language to the effect that a proposal to construct a high school building in connection with a state normal school and a grade school building from proceeds of one school

district bond issue, with statement of amounts to be allocated to each building, presented a single and not a dual proposal under the applicable provision of the New Mexico constitution. However, the statement there is dictum. The court said:

"We are spared the necessity of *deciding* the issue presented in the case before us. We even may concede a dual proposal and yet must hold the plaintiff without right at this time to raise the question. * * *" (Emphasis ours.)

Furthermore, there is a salient difference between the facts in the White case and in the case before us in that in the White case the high school and the grade school go together as part of the same local educational unit, just as in the Dickinson case the court house and the jail went together in meeting a local situation. In the case before us the hospital and the isolation ward in each instance go together as parts of the same local health unit, but the two hospitals, each with its own isolation ward, are separate and independent systems, to be located some 35 miles apart in different cities.

Aside from the foregoing distinctions there appears to us a still further differentiating feature. The provisions of the New Mexico constitution involved in the two cases are not the same. N.M. Constitu-

tion, Article 9, Section 11, which was involved in the White case, insofar as it is pertinent here reads as follows:

"No school district shall borrow money, except for the purpose of erecting *and furnishing school buildings or purchasing school grounds,* and in such cases only when the proposition to create the debt shall have been submitted to a vote of such qualified electors of the district as are owners of real estate within such school district, and a majority of those voting on the question shall have voted in favor of creating such debt. * * *" (Emphasis ours.)

The provisions of Section 11, involved in the White case, are broader in their scope than the corresponding provisions of Section 10 involved in this case. Section 11 expressly authorizes the use of borrowed moneys for furnishing school buildings or for purchasing school grounds. There is *no comparable provision in Section 10* which expressly authorizes counties to use the borrowed moneys only for "erecting" the public buildings. Section 10 in addition contains an express limitation which is absent from Section 11 in that it specifies that the money may be borrowed for "necessary" public buildings. Since the word "necessary" is missing from Section 11, it would appear that perhaps moneys for

school buildings could be voted when it appeared "convenient" or otherwise "desirable" but not technically necessary. In other words, the difference of language in the two sections of the constitution placed in juxtaposition is suggestive of an intention on the part of the constitution makers to limit the borrowing power of counties to a greater degree than that of the school districts.

We conclude that the holding in the White case is not determinative of the issue herein involved.

In reaching our conclusion that the petition herein involved is void for duality we are not unaware of the fact that because of the numerical majority of residents in the Carlsbad area, a separation of the question into two distinct propositions upon the election ballot, one calling for a vote for and against construction of the hospital at Carlsbad and the other calling for a vote for or against the construction of another hospital at Artesia might result in the approval of the bond issue for the hospital at Carlsbad and the rejection of the proposition for a hospital at Artesia. Possibly, it may be said, the numerical majority of people living in the Carlsbad area will look after their own hospital needs but will refuse to recognize the legitimate needs of the people of Artesia. The argument, however, goes only to point up the dangers of

the so-called "log-rolling" petition. As observed in Rea v. City of La Fayette, 1908, 130 Ga. 771, 61 S.E. 707, 708:

"\* \* \* To present both propositions in a single submission, thus rendering the success of the one dependent upon the success of the other, or the defeat of the one dependent upon the defeat of the other, is clearly unfair to the voters, and not at all conducive to a free and untrammeled expression of public sentiment as to the merits of either. \* \* \*"

It may compel the voter, in order to get what he earnestly wants, to vote for something which he does not want. Hart v. Board of Education, 1923, 299 Mo. 36, 252 S.W. 441.

 Consideration of Article 9, Section 10, of the New Mexico Constitution, our holding in Lanigan v. Town of Gallup, supra, and in Dickinson v. Board of Commissioners of De Baca County, supra, as well as the plain meaning of the provisions of Laws 1947, Chapter 148, all lead to the inescapable conclusion that a majority vote in favor of the issuance of bonds for the construction of each hospital, separately, either with or without an isolation ward, is required. We accordingly hold that two separate propositions were illegally joined as one proposal in the petition.

It follows that the trial court erred in granting judgment against the appellants and in issuing the Peremptory Writ of Mandamus. Let mandate issue that the Peremptory Writ be dissolved, and

It is so ordered.

SADLER, C. J., and McGHEE, COMPTON and LUJAN, JJ., concur.