838 P.2d 963

Representative Murray **RYAN**
and Representative Ben
Lujan, Petitioners,

v.

Hon. Stephanie **GONZALES**, Secretary
of State, Respondent.

No. 20636.

Supreme Court of New Mexico.

Aug. 28, 1992.

Modrall, Sperling, Roehl, Harris & Sisk, Arthur D. Melendres, Bonnie J. Paisley, Albuquerque, for petitioners.

Tom Udall, Atty. Gen., Andrea R. Buzzard, Elizabeth A. Glenn, Asst. Attys. Gen., Santa Fe, for respondent.

OPINION

RANSOM, Chief Justice.

Representatives Murray Ryan and Ben Lujan, of the New Mexico Legislature, petitioned this Court for a writ of mandamus ordering the Secretary of State to submit multiple questions rather than a single question under the 1992 Capital Projects General Obligation Bond Act that will go before the voters in November of 1992. At issue was whether the debt authorized by the 1992 Bond Act was for multiple works or objects, or for "some specified work or object" as required by Article IX, Section 8 of the New Mexico Constitution. We ruled from the bench at oral argument that the Secretary of State must submit separately to the voters each of nine questions in the 1992 Bond Act. In this opinion, we announce the rationale for issuing our writ of mandamus to that effect.

The 1992 Capital Projects General Obligation Bond Act, 1992 N.M.Laws, chapter 103, §§ 1–17, authorizes debt not to exceed $92,165,400

to make capital expenditures for senior citizens facilities and vehicles; state public educational capital improvements and acquisitions; the automation of court systems statewide; renovations and purchase of books and audio-visual materials; health care facility capital improvements and equipment; acquisition of water rights in the Pecos River basin; acquisition, construction and modification of wastewater facilities; rehabilitation of state parks statewide; and state fair renovation and improvements * * *.

*Id.* at § 13 (statement of question to be submitted in the ballot used at the 1992 general election). Article IX, Section 8 of the New Mexico Constitution provides that any such law be "for some specified work or object" and shall take effect only upon receiving a majority of all votes cast thereon when submitted to the voters at a general election.[1]

We have not dealt previously with the "specified work or object" language of Article IX, Section 8, but we have addressed the legislative practice of joining together two or more independent measures so those who support any one measure will feel obliged to vote for the others in order to secure passage of the measure they favor. This is the practice of "logrolling." *State ex rel. Chavez v. Vigil–Giron,* 108 N.M. 45, 47, 766 P.2d 305, 307 (1988) (construing Article XIX, Section 1, which mandates that two or more constitutional amendments "be so submitted as to enable the electors to vote on each of them separately").

We have found logrolling of propositions in bond issue elections to be constitutionally impermissible under provisions of the Constitution parallel to Section 8 that restrict indebtedness of counties, school districts, and municipalities. *See* N.M. Const. art. IX, §§ 10–12; *Lanigan v. Town of Gallup,* 17 N.M. 627, 642–44, 131 P. 997,

1003 (1913) (construing Section 12; enlargement of water system was independent of creation of a sewer system, *i.e.,* they do not share an identity of purpose and one could naturally be operated without the other, therefore, the people should be allowed to vote on them separately); *Johnston v. Board of Educ.,* 65 N.M. 147, 333 P.2d 1051 (1958) (construing Section 11; bond issue to finance construction of several school buildings and purchase of sites, some immediate and some in the future, was a single proposition, to wit, providing proper school facilities); *White v. Board of Educ.,* 42 N.M. 94, 99, 75 P.2d 712, 715 (1938) (ruling that plaintiff was barred from challenging bond issue to finance both a high school and a grade school, in dicta the Court said: "We have no hesitancy in saying that the construction of a high school building and a grade school building from proceeds of one bond issue * * * presents but a single proposal."); *Dickinson v. Board of Comm'rs,* 34 N.M. 337, 281 P. 33 (1929) (construing Section 10; while jail and courthouse in one building might be a single proposition, the wording of the petition calling for the bond election and the treatment of the question by the Board of Commissioners showed that each were separate from the other and therefore constituted a double proposition); *City of Albuquerque v. Water Supply Co.,* 24 N.M. 368, 379–80, 174 P. 217, 220 (1918) (holding bond issue worded as providing funds for "purchase or erection" of water system (purchase existing privately owned system or build a new system) was a single proposition, to wit, to acquire a water system).

■ Construing Section 12, *Lanigan* is the seminal case in which this Court said that the purpose of requiring an election is to give the voters the opportunity to express their approval or disapproval of a proposed improvement, and that the sub-

---

**1.** The Constitution states that "No debt ... shall be contracted by or on behalf of this state, unless authorized by law for some specified work or object; which law shall provide for an annual tax levy sufficient to pay the interest and to provide a sinking fund to pay the principal of such debt within fifty years from the time of the contracting thereof. No such law shall take effect until it shall have been submitted to the qualified electors of the state and have received a majority of all the votes cast thereon at a general election * * *." N.M. Const. art. IX, § 8.

mission of multiple proposals on a single ballot defeats such purpose. *See Lanigan,* 17 N.M. at 643, 131 P. at 1003. The Court reasoned that to be meaningful, electoral approval must be of single propositions. *Id.* Like Section 12, Section 8 requires that the legislature submit bond propositions to the voters. Accordingly, the basic rationale of *Lanigan* requiring single propositions for approval would be equally applicable to Section 8. More decisively, Section 8 contains language not found in Sections 10 through 12: that the authorization for the debt must be "for some specified work or object." This singular language strengthens our conviction that the framers intended State indebtedness to be subject to the approval of the voters of New Mexico one proposition at a time. We hold that the purpose of the "specified work or object" language is to prevent logrolling.

Having held that Article IX, Section 8 prohibits logrolling, we turn next to the question of whether the proposed ballot wording of the 1992 Bond Act constitutes logrolling. In Section 2 of the 1992 Bond Act, the legislature specifically found the projects to be "necessarily related to each other to accomplish [the betterment of the welfare of the people] and that the authorized projects are interrelated." The legislature further found that

> in order to fulfill these purposes, the voters of the state should consider the 1992 Capital Projects General Obligation Bond Act as set forth in Section 13 of that act and that presenting the question to the voters in a unified ballot question that specifies the specific works or objects as required by the constitution is constitutional and gives fair notice of the intended issuance of bonds and use of public funds.

We need only restructure, in the context of this case, that which we acknowledged in *Chavez.* As in *Chavez,* "the question to be answered is whether the legislature reasonably could have determined that [the 1992 Bond Act] embraces but one object." *Chavez,* 108 N.M. at 48, 766 P.2d at 308. Also, "we believe it comports better with the doctrine of separation of powers to decide what rationally may be joined rather than what rationally may be separated." *Id.* The legislature must be deemed to appreciate no less than we the intent of the Constitution to avoid logrolling by prohibiting joinder of distinct projects that are not dependent upon each other, and that have no direct, necessary, or logical connection between the operation of each project. *Id.* Yet, while we will accord strong deference to the legislative findings, it is for this Court in the final analysis to rule on issues of constitutionality.

The Secretary of State argues that the specified object of the 1992 Bond Act is to fund public capital improvements and acquisitions for the betterment of the welfare of the people of New Mexico and compares that object to other bills passed by the 1992 legislature. The projects are germane to an overarching object of welfare, she asserts, and certainly they are. We must agree, further, that the object of funding capital outlay is rationally separate from the objects of other legislation. But that is not the test. In analyzing whether a law authorizing a bond election contains single or multiple objects, we look not at whether the authorizing law is separate from other acts of the legislature, but to whether the authorizing law itself contains a separate proposition or object. *See Lanigan,* 17 N.M. at 639, 131 P. at 1001–02 ("Every statute or constitutional provision must be construed with reference to the object intended to be accomplished by it."). A "specified work or object" is defined by the rational interrelationships of its parts. *See Johnston,* 65 N.M. at 150, 333 P.2d at 1053 ("[I]n order to constitute a single proposition or question there must exist a natural relationship between the objects covered by the ballot so that they form but one rounded whole or single plan." (quoting *Buhl v. Joint Indep. Consol. Sch. Dist. No. 11,* 249 Minn. 480, 82 N.W.2d 836, 838 (1957))); *Carper v. Board of County Comm'rs,* 57 N.M. 137, 142, 255 P.2d 673, 676 (1953) (in determining whether there are multiple propositions as prohibited by applicable statute, question is whether there "is the existence of a natural relationship between the various structures or ob-

jects united in one proposition so that they form, as the courts express it, 'but one rounded whole'" (quoting 4 A.L.R.2d 617, 630)). In *Chavez*, we could not ignore the rational linchpin joining the qualifications and merit selection of judges, their numbers, their districting, and the selection of their chief administrative officers, and we held that, "although perhaps testing the limits of joinder, the provisions in this amendment are not devoid of a reasonable or rational basis of commonality." *Chavez*, 108 N.M. at 49, 766 P.2d at 309.

■ "The betterment of the welfare of the people" is not a specified object that necessarily relates capital outlay projects to each other. Such a test for commonality does not satisfy the constitutional purpose of avoiding logrolling. To the contrary, it is a standard that would encourage logrolling. The dissent points persuasively to the obvious: that the success or failure of specified expenditures, if separately stated, well may depend upon the percentage of population residing in the area affected. By implication, the dissenter argues in favor of such logrolling as may be approved by the legislature to achieve equity in state-wide capital improvement projects. For optimum likelihood of passage, questions related to capital improvements in less populated areas would have to await a year in which they could be joined in a ballot with projects in more populated areas. On the other hand, who is to say that a capital outlay proposed for the less populated area is not a boondoggle sought to be carried on the coattails of legitimate questions. If the Constitution prohibits logrolling, and it does, this 1992 Bond Act is the target of that prohibition, for good or for bad. The intent of the Constitution is satisfied only by a legislative enactment in which the parts of the project may be identified by a common character or by a dependent, but logical, interrelationship between projects. Section 13 of the 1992 Bond Act lumps together objects with no commonality but "welfare" and which do not interrelate.

In Section 12 of the 1992 Bond Act, the legislature provides that should the state-ment of the ballot question set out in Section 13 be held unconstitutional by a court of competent jurisdiction, the Secretary of State shall submit the bond issue to the voters in accordance with the alternative statement of the ballot question provided in Section 14. In Section 14, the legislature did bring together, under nine separate questions, those projects having a common character. We defer to the rational joinder made by the legislature of projects of a common character under those nine separate objects. We believe the legislature has, in Section 14 of the 1992 Bond Act, properly joined projects of a common character.

BACA, MONTGOMERY and FRANCHINI, JJ., concur.

FROST, J., dissents.

FROST, Justice (dissenting).

I must dissent from the majority's narrow interpretation of the constitutional mandate that a bond be issued for "some specified work or object," and the resulting separation on the ballot of provisions in the comprehensive 1992 Capital Projects General Obligation Bond Act. In its analysis, the majority pays deference to the important separation of powers policies followed in *State ex rel. Chavez v. Vigil–Giron*, 108 N.M. 45, 766 P.2d 305 (1988), but in the end it turns its back on *Chavez* to revive the technical and unworkable "double proposition" rule first enunciated in *Lanigan v. Town of Gallup*, 17 N.M. 627, 131 P. 997 (1913).

In *Chavez*, we found that the purpose of a similar section in the Constitution, requiring that constitutional amendments be submitted separately, was to allow voters the opportunity to vote for each amendment separately and thereby prevent "logrolling," the evil proscribed by the constitutional mandate now under the Court's scrutiny. *Chavez*, 108 N.M. at 47, 766 P.2d at 307. We were careful to acknowledge in that case, however, that the legislature must be deemed to be cognizant of the constitutional purpose of preventing logrolling, and "that strong deference should

be shown to the legislature" to uphold the separation of powers doctrine. *Id.* at 48, 766 P.2d at 308.

For that reason, we upheld the scrutinized amendment in *Chavez* that provided for (1) a method for election and retention of justices and judges, (2) an increase in the age and legal experience requirements for justices and judges, (3) the selection of the chief justice and chief judges by their peers, (4) the increase of court of appeals judges from three to seven, and (5) the legislative authority to annually redraw judicial district boundaries, increase the number of judicial districts, and provide for additional judges in those districts. *Id.* at 46–47, 766 P.2d at 306–07. In upholding these varied provisions of the amendment as a single amendment, we held that "although perhaps testing the limits of joinder, the provisions in this amendment are not devoid of a reasonable or rational basis of commonality." *Id.* at 49, 766 P.2d at 309. In Section 2 of the 1992 Bond Act the legislature specifically found:

> [F]or the betterment of the welfare of the people of New Mexico, there is a need to issue general obligation bonds in order to fund public capital improvements and acquisitions, including the construction and improvement of public buildings and the acquisition of equipment, furnishings and other necessities for the state, its political subdivisions and institutions. The legislature further finds that the acquisition of certain water rights is also necessary for the betterment of the welfare of the people of New Mexico [and] that the capital projects and acquisitions authorized by the 1992 Capital Projects General Obligation Bond Act are necessarily related to each other to accomplish the foregoing purposes and that the authorized projects are interrelated.

I do not see how the majority in this case determines that the provisions in the 1992 Bond Act are any more "devoid of a reasonable or rational basis of commonality" than the varied provisions upheld in *Chavez*, especially when the legislature determined in this matter that the provisions were interrelated.

The "object" of the 1992 Bond Act is to fund public capital improvements and acquisitions for the betterment of the welfare of the people of New Mexico. Related to that object are the various proposed capital improvement expenditures. Given the legislative finding of "relatedness" between these provisions, the 1992 Capital Projects General Obligation Bond Act should be submitted to the voters in a unified ballot question.

I believe the majority failed in its constitutional separation of powers duty to indulge every presumption in favor of the validity and regularity of legislative enactments. *See City of Raton v. Sproule,* 78 N.M. 138, 142, 429 P.2d 336, 340 (1967). The high courts of other states have confronted the basic issue presented in this matter and have taken the position urged in this dissent. The Supreme Court of New Jersey, while recognizing that their constitutional "single object" requirement was implemented to prevent logrolling, upheld a bond act for the construction and improvement of penal institutions, institutions for the mentally retarded, and institutions for the blind and handicapped. *New Jersey Ass'n on Correction v. Lan,* 80 N.J. 199, 403 A.2d 437, 442–43 (1979). The New Jersey Court noted that the legislature had always been given deference in determining the relatedness of projects and that that deference should be given an important precedential position in determining the constitutionality of a statute. *Id.* at 445.

The Supreme Court of Washington upheld legislation authorizing capital projects ranging from fisheries to educational facilities. It reasoned that "this constitutional requirement [mandating a single subject] is to be liberally construed so as not to impose awkward and hampering restrictions upon the legislature." *State Fin. Comm. v. O'Brien,* 105 Wash.2d 78, 711 P.2d 993, 994 (1986) (quoting *Kueckelhan v. Federal Old Line Ins. Co.,* 69 Wash.2d 392, 418 P.2d 443 (1966)); *see also Norton v. Lusk,* 248 Ala. 110, 26 So.2d 849 (1946) (appropriations bill for the payment of outstanding debts of state and its agencies, without

specifying the kind of debt or its purposes, had but one "subject"); *Short v. State*, 600 P.2d 20 (Alaska 1979) (bond act for construction and improvement of correctional and public safety facilities met "one-subject" requirement); *Gellert v. State*, 522 P.2d 1120 (Alaska 1974) (single bond proposition approved by the voters to make capital improvements for flood control and small boat harbor projects met "one-subject" requirement); *Walton v. Carter*, 337 S.W.2d 674 (Ky.1960) (bond act to fund development and improvement of state parks, and construction and improvement of highways, bridges and tunnels constituted but one "subject"). The precedent of *Chavez*, giving great weight to the legislature's determination of relatedness of provisions to constitute but one object, should have been followed in this case.

In addition, the majority mistakenly relies upon cases involving general obligation bonds proposed to be issued by municipalities, counties, or school districts. The issuance of such bonds are governed by Article IX, Sections 10, 11, and 12 of the New Mexico Constitution. The governing constitutional provision in this matter is Art. IX, Section 8. The majority erroneously proceeds on the basis that the requirement of the relevant constitutional provisions is identical. The majority utilizes cases that were decided in the context of local government funding, and would extend the rulings in those cases to this question involving a bond act that provides for funding state-wide capital improvements projects. Those cases do not involve a law in which the legislature determined the "object" of the bond act and the "relatedness" of the proposed expenditure. In those cases, this Court did not have the benefit of recent decisions such as *Chavez*, which accorded deference to the legislature's determination of "object" in analyzing "double proposition" issues. In the context of state-wide funding, those cases would impose an erroneous hypertechnical application of the "double proposition" rule.

If the position adopted by the majority is followed to its logical conclusion, each individual expenditure provided in a general obligation bond act will have to be listed and voted upon as a separate question. This would result in unduly cumbersome and excessively lengthy ballots. A greater

vice is that the success or failure of each expenditure would depend upon the percentage of population residing in the area affected by the expenditure. The result that would follow would be that a state-wide property tax could be imposed to finance projects located only in the more populated areas of the state. The majority opinion will make it exceedingly difficult for future legislatures to enact equitable legislation providing for state-wide capital improvements projects.

Giving the appropriate respect to the constitutional separation of powers, and for numerous practical reasons, we should not disturb the legislature's determination that the 1992 Bond Act met the single object test. This Court said it best in *Chavez:*

> When, as here, competing interpretations or applications of the Constitution's * * * process do not present one singularly clear and plain mandate, it is to the people and their elected representatives that the Court must turn for the dynamic meaning which most comports with the purpose and intent of a Constitution in which the framers recognize that all political power is vested in and derived from a people who have the sole and exclusive right to. govern themselves.

108 N.M. at 50, 766 P.2d at 310. I need say no more.