888 P.2d 458

STATE of New Mexico, ex rel., Guy CLARK, Chris Wentz, Christine Wentz, Robert M. Hawk, George D. Buffett, and Max Coll, Petitioners,

v.

The STATE CANVASSING BOARD, comprised of Honorable Stephanie Gonzales, Honorable Gary Johnson, and Honorable Joseph F. Baca, Respondents,

and

New Mexico Attorney General, New Mexicans for Lottery Games, Ruidoso Downs Racing, Inc., Santa Fe Racing, Inc., Nuevo Sol Turf Club, Inc., and New Mexico Horsemen's Association, Intervenors.

No. 22489.

Supreme Court of New Mexico.

Jan. 11, 1995.

Victor R. Marshall & Associates, P.C., Victor R. Marshall, Alexis H. Johnson, Albuquerque, for petitioners.

Tom Udall, Atty. Gen., Daniel Yohalem, Elizabeth A. Glenn, William Keller, Frederic S. Nathan, Jr., Asst. Attys. Gen., Santa Fe, for respondents and Intervenor State.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Charles K. Purcell, Andrew G. Schultz, Alison K. Schuler, Albuquerque, Montgomery & Andrews, P.A., Gary R. Kilpatric, Sarah M. Singleton, Santa Fe, for Intervenor New Mexicans for Lottery Games.

Kemp, Smith, Duncan & Hammond, P.C., John P. Eastham, Albuquerque, for Intervenors Ruidoso Downs Santa Fe Racing, Inc., Nuevo Sol Turf Club, Inc., and N.M. Horsemen's Ass'n.

## OPINION

FROST, Justice.

Petitioners, several citizens and three New Mexico legislators, filed their verified petition seeking a writ of mandamus from this Court directing Respondents, who together serve

as the State Canvassing Board, not to certify the vote held on November 8, 1994, on Amendment 8. Amendment 8 authorized a state-operated lottery and wagering on video machine games of chance. Petitioners allege that Amendment 8 consisted of two independent proposals improperly joined together and submitted to the voters in violation of Article XIX, Section 1 of the New Mexico Constitution.

The State Canvassing Board, whose function is primarily ministerial, took no position on the merits of this case. Consequently, several parties moved to intervene including New Mexicans for Lottery Games (Yes–on–8) and Ruidoso Downs Racing (Ruidoso) in support of Respondents and the Attorney General in support of Petitioners. Their requests to intervene were subsequently granted.

 Given the great public importance of the issue involved in this case, this Court properly exercises original jurisdiction over the petition for a writ of mandamus. *See State ex rel. Chavez v. Vigil–Giron*, 108 N.M. 45, 46, 766 P.2d 305, 306 (1988); *State ex rel. Sego v. Kirkpatrick*, 86 N.M. 359, 363, 524 P.2d 975, 979 (1974). In addition, this Court may properly conduct a post-election review of a proposed constitutional amendment. *See Chavez*, 108 N.M. at 47, 766 P.2d at 307. Voter approval of a challenged amendment gives rise to a presumption of validity but does not cure a violation of Article XIX of the New Mexico Constitution. *City of Raton v. Sproule*, 78 N.M. 138, 142–43, 429 P.2d 336, 340–41 (1967).

After the initial submission of the petition, this Court issued an alternative writ of mandamus and stay directing the Canvassing Board to refrain from certifying the vote on Amendment 8 until we had the opportunity to fully consider the amendment's constitutionality. We now find that Amendment 8 violates Article XIX of the Constitution and accordingly direct that the vote for Amendment 8 not be certified.

## FACTS

In 1993 the New Mexico state legislature passed House Joint Resolution 11, which proposed an amendment to the New Mexico Constitution permitting the legislature to set up a statewide lottery and legalizing wagering on video machine games of chance. 1993 N.M. Laws, H.J. Res. 11, at 4457–58. As required by Article XIX of the New Mexico Constitution, this resolution was submitted to the electors as Amendment 8 in the 1994 general election. The voters approved Amendment 8 with an unofficial final tally of approximately 235,000 in favor to 200,300 against. Before the State Canvassing Board certified the final vote, however, Petitioners brought this action, claiming that Amendment 8 violated Article XIX, Section 1 of the New Mexico Constitution.

Amendment 8 provides:

A JOINT RESOLUTION

PROPOSING AN AMENDMENT TO ARTICLE 20 OF THE CONSTITUTION OF NEW MEXICO TO ADD A NEW SECTION TO PERMIT A STATEWIDE LOTTERY AND CERTAIN GAMES OF CHANCE.

BE IT RESOLVED BY THE LEGISLATURE OF THE STATE OF NEW MEXICO:

Section 1. It is proposed to amend Article 20 of the constitution of New Mexico by adding a new Section 22 to read:

"A. A state operated lottery to be conducted statewide and wagering on video machine games of chance to be conducted statewide shall be lawful from the first moment of the ninetieth day following the adjournment of the next regular session of the legislature held subsequent to any general election or special election in which a majority of voters, voting on the question, vote in favor of the adoption of this amendment.

B. The legislature may enact such laws governing the conduct of the lottery and games of chance as deemed necessary and in the public interest, including imposition of taxes, wagering limits, restrictions on the hours of operation and limitations on the locations and facilities where wagering can occur."

Section 2. The amendment proposed by this resolution shall be submitted to the

people for their approval or rejection at the next general election or at the next special election prior to that date which may be called for that or any other purpose.

1993 N.M. Laws, H.J. Res. 11, at 4457–58.

The Petitioners allege that the authorization of a state-operated lottery and the legalization of wagering on video machine games of chance are two separate objects which were improperly joined in a single amendment.

## DISCUSSION

■ Article XIX, Section 1 of the New Mexico Constitution provides, in pertinent part, "If two or more amendments are proposed, they shall be so submitted as to enable the electors to vote on each of them separately...." The purpose of this provision is to prevent the abusive practice of "logrolling," whereby the legislature joins two or more independent measures to ensure that voters who support any one of the measures will be coerced into voting for the entire package in order to secure passage of the individual measure they favor. *Chavez,* 108 N.M. at 47, 766 P.2d at 307; *Sproule,* 78 N.M. at 142, 429 P.2d at 340.

We noted in *Sproule* that "the particular vice in 'logrolling,' or the presentation of double propositions to the voters, lies in the fact that such is 'inducive of fraud,' and that it becomes 'uncertain whether either [of] two or more propositions could have been carried by vote had they been submitted singly.'" *Sproule,* 78 N.M. at 144, 429 P.2d at 342 (quoting *State ex rel. Sch. Dist. v. Gordon,* 223 Mo. 1, 122 S.W. 1008, 1018 (1909) (Graves, J., dissenting)). Indeed, we recently reaffirmed that "the joinder of two or more amendments is no mere irregularity, and that the constitutional prohibition against joinder goes to the heart of the

amendment process mandated by the people in the adoption of their Constitution." *Chavez,* 108 N.M. at 48, 766 P.2d at 308.

■ Of course, in reviewing constitutional amendments submitted to the voters, we afford the legislature substantial deference in its determination of both the overall purpose of a proposed amendment and the changes incidental to and necessary for that purpose. *Id.* at 47, 766 P.2d at 307. Thus, "as with legislative enactments, every presumption is to be indulged in favor of the validity and regularity of a constitutional amendment, and we must therefore hesitate to overturn a legislative determination that a proposal actually constitutes but one amendment." *Id.* (citation omitted). However, "while we will accord strong deference to the [legislature], it is for this Court in the final analysis to rule on issues of constitutionality." *Ryan v. Gonzales,* 114 N.M. 346, 348, 838 P.2d 963, 965 (1992).[1]

■ Accordingly, the standard of review to be applied is the reasonable or rational basis test, *Chavez,* 108 N.M. at 47, 766 P.2d at 307, and the principal question to be answered is "whether the legislature reasonably could have determined that a proposed amendment embraces but one object." *Id.* at 48, 766 P.2d at 308. Our examination of whether an amendment embraces one object is governed by the proposition that "when distinct changes to the Constitution are not dependent on each other, and there is no direct, necessary, or logical connection between the operation of each, they should be submitted separately to the voters." *Id.*

■ In addition, we note that the examination of whether a proposed constitutional amendment comports with the single proposition requirement is highly fact specific. As we stated in *Sproule,* 78 N.M. at 144, 429 P.2d at 342, while most states have adopted a

---

1. *Ryan* differs from the case at bar in that it involved the consideration of a different constitutional provision than the one dispositive here. In *Ryan,* this Court interpreted Article IX, Section 8 of the New Mexico Constitution, which requires voter approval of the assumption of public debt. *Ryan,* 114 N.M. at 347, 838 P.2d at 964. Article IX, Section 8 provides that before the proposed debt can be approved by the electorate it must first have been "authorized by law for some specified work or object." In addition, the *Ryan* Court noted that the legislature had made specific findings that the projects at issue were interrelated and necessary to further a common purpose. *Id.* at 348, 838 P.2d at 965; *id.* at 350, 838 P.2d at 967 (Frost, J., dissenting). No such findings, however, were made regarding the differing aspects of Amendment 8.

rule similar to that set out above, "[t]he difficulty arises in the application of the rule to the concrete factual situations presented in the many cases."

In examining the factual situation presented in this case, we find that Amendment 8 consists of two measures that fail to demonstrate any direct, necessary, or logical connection. Ruidoso and Yes–on–8 argue that Amendment 8 is constitutional because its two prongs relate to the single overarching theme of "gambling," specifically, "relaxing New Mexico's gambling laws." For support, they point to *Chavez*, 108 N.M. at 49, 766 P.2d at 309, in which this Court upheld a multi-faceted constitutional amendment involving various aspects of judicial reform. The amendment at issue in *Chavez* contained provisions ranging from new methods for selecting and retaining justices and judges, as well as new requirements for holding those offices, to increasing the number of judicial districts and providing for the periodic redrawing of those districts. *Id.* at 46–47, 766 P.2d at 306–07. In upholding the amendment, this Court noted that the proposed changes were "germane to an overarching theme of 'judicial reform.'" *Id.* at 49, 766 P.2d at 309.

■ Although we agree that both prongs of Amendment 8 also relate to an overarching theme, more is required to demonstrate a single object. The *Chavez* Court noted, "We cannot ignore the *rational linchpin* that joins the qualifications and merit selection of judges, their numbers, their districting, and the selection of their chief administrative officers." *Id.* (emphasis added). In addition to relating to an overarching theme, the elements of the amendment in *Chavez* were all interdependent and each was necessary to effectuate the desired reform. The requirement of a rational linchpin joining the various elements of an amendment serves to prevent the linking of independent propositions simply by the selection of a sufficiently broad overarching theme.

The Oklahoma Supreme Court articulated this same requirement under comparable facts in *In re Initiative Petition No. 314*, 625 P.2d 595 (Okla.1980). After examining an amendment involving on-premises consumption of alcohol, franchising for brewers, alcohol advertising, and control of liquor traffic under a single-subject constitutional requirement similar to New Mexico's, the Oklahoma court held,

> Even under the "rational relationship" test, the initiative fails for each of the major proposals—advertising, franchising and liquor by the drink—is an important, substantial change in our constitution. None is reasonably "subordinate" to the other. There is no interdependence between proposals permitting advertising, franchising and liquor by the drink. Allowing franchising is not incidental or supplemental to permitting advertising, nor is it an administrative detail. They are certainly not so "interrelated and interdependent" that they form an "interlocking package" and they do not have a common underlying purpose, as each proposal has its own purpose.

*Id.* at 607 (citations omitted); *see also Johnston v. Board of Educ.*, 65 N.M. 147, 150, 333 P.2d 1051, 1053 (1958) ("The general rule gleaned from the authorities is that in order to constitute a single proposition or question there must exist a natural relationship between the objects covered by the ballot so that they form but one rounded whole or single plan." (quoting *Buhl v. Joint Indep. Consol. Sch. Dist. No. 11*, 249 Minn. 480, 82 N.W.2d 836, 838 (1957))).

■ It is precisely this rational linchpin of interdependence or necessary connection that is lacking from the two prongs of Amendment 8. The rights created, the means of implementation, and the subject matter and purpose of the two prongs are distinct, not rationally interrelated, and do not form an interlocking package necessary to effectuate a common object, as was the situation in *Chavez*.

First, the two prongs of Amendment 8 create separate rights that are distinct and unrelated. The lottery portion of the amendment establishes a purely public right, authorizing the legislature to create a lottery. However, the public right created by Amendment 8 merely permits the legislature to do that which it is already capable of doing.

Currently, there is no constitutional prohibition against a state-run lottery. The laws prohibiting the creation of a lottery are purely statutory, *see* NMSA 1978, §§ 30–19–1 to –15 (Repl.Pamp.1994), and as such, the Legislature is empowered to adjust them at any time without the aid of a constitutional amendment. The Legislature did not need Amendment 8 to be approved by the public in order to create a state-operated lottery. Thus, the public right purportedly created by Amendment 8 is illusory; it does not vest the Legislature with any new powers. Instead, it simply reaffirms what the Legislature was already capable of doing prior to Amendment 8. Nor does Amendment 8 require the legislature to establish a lottery. It merely legalizes state-operated lotteries while leaving the decision whether to create one entirely up to the legislature.

In contrast, the gaming portion of Amendment 8 creates a new private right to wager on video machine games of chance unconnected to the public right to create a lottery. The second prong of Amendment 8 bypasses the legislature and directly elevates certain forms of gambling to the level of constitutionally protected activities. Under Amendment 8, the legislature may only regulate how certain forms of gambling are conducted, not whether they are conducted. Indeed, because video gaming would be a private constitutional right, it is not clear to what extent the legislature or local communities could limit where video gaming takes place, who may operate such games, or who is eligible to participate in video gaming. In addition, legislative regulations regarding video gaming would be reviewed under a more exacting scrutiny similar to other constitutionally protected activities. Thus, the private right to video gaming has no logical interconnection with the public right to enact a state lottery in furthering the goal of gambling reform.

Second, there is no rational relation between the implementation of the two prongs of the amendment. The first prong merely allows the legislature to institute a lottery. If the state chooses to establish a lottery,

additional legislation would still be required to effect that goal. If, however, the state decides not to follow through with any supplemental legislation, the lottery will not come into existence. The state's ability to implement a lottery, however, is in no way dependent on or related to the creation of a private right to gamble.

Conversely, the private right to wager on certain games of chance set out in the second prong of Amendment 8 is self-executing, becoming effective ninety days after the next legislative session adjourns. This right will come into existence regardless of whether the legislature takes any action on private gambling. It also is not dependent on and has no logical connection to any action that the state may take toward establishing a lottery.

Finally, the subject matter and purpose of the two prongs are not the same. A state-operated lottery authorized under the first prong of Amendment 8 is a single, limited form of gambling involving the purchase of chances and a drawing of lots to determine a winner. *See, e.g., Poppen v. Walker,* 520 N.W.2d 238, 247 (S.D.1994) (reviewing both the history of lotteries and the predominant state-run lotteries in the midwest, and concluding that the term lottery does not include video games of chance). It is administered by the state in order to generate revenues for public services. The funds flow directly into the state coffers with a portion set aside for administrative costs. It is in many ways akin to a voluntary tax. *See, e.g.,* Ronald J. Rychlak, *Lotteries, Revenues and Social Costs: A Historical Examination of State–Sponsored Gambling,* 34 B.C.L.Rev. 11, 48–49 (1992).

In comparison, the category of "video machine games of chance" is extremely expansive. It would encompass video poker, black jack, keno, slot machines and potentially any other form of gambling that incorporates video technology.[2] Furthermore, absent additional legislation authorizing state-run video

---

2. The language of Amendment 8 is unclear as to what limitations, if any, exist regarding the scope of the types of gambling that fall within the category of "video machine games of chance."

It potentially could include betting on sporting events that are broadcast on television, as well as any form of casino style gambling, such as roulette or craps, that incorporates a video monitor.

gambling, all video gaming would be privately operated, solely for profit. While the state may be able to tax the activity of video gambling to raise revenues, any connection between private gambling receipts and state revenues would be indirect, with the state's share dependent on the amount of private profit realized by the individual organizations operating the video gaming. The difference in the breadth and application of the two categories of Amendment 8 demonstrate that they are aimed at accomplishing two distinct goals pertaining to gambling.

We hold that, because the rights created, the means of implementation, and the subject matter and purpose of the two prongs of Amendment 8 are not interdependent, and have no direct, necessary, or logical connection in their operation, they should have been submitted separately to the voters. *See Chavez*, 108 N.M. at 48, 766 P.2d at 308.

■ As further support for our holding, we conclude that the ballot language used to describe Amendment 8 contributed to the logrolling of the state-run lottery and private video gambling measures together. The ballot description reads: "Proposing an amendment to Article 20 of the Constitution of New Mexico to add a new section to permit a statewide lottery and certain games of chance." We agree with Yes–on–8 that the title of Amendment 8 printed on the ballot complied with the technical requirement set out in Article XIX, Section 1 of the Constitution which directs the Secretary of State to include the full title of the joint resolution proposing the constitutional amendment and the constitutional amendment number assigned to it. However, we also agree with the Arkansas Supreme Court that a ballot title should be intelligible, and impartial. "[I]t should be complete enough to convey an intelligible idea of the scope and import of the proposed law[,]" and "be free from any misleading tendency whether of amplification, of omission, or of fallacy." *Plugge v. McCuen*, 310 Ark. 654, 841 S.W.2d 139, 140 (1992) (citation omitted), *overruled on other grounds by Bailey v. McCuen*, 318 Ark. 277, 884 S.W.2d 938, 942 (1994).

■ Accordingly, we find that the title of the amendment, while technically proper, exacerbated the problems inherent in the vice of logrolling. The expression "and certain games of chance" does not alert the voter as to the nature or scope of the second prong of the amendment regarding video gaming. Instead of informing the voter, the title serves to highlight the state lottery aspect of the amendment while downplaying the fact that the amendment creates a private right to wager on video games of chance. In so doing, the ballot language may have lured the voters into casting their votes based on the portion of the amendment that creates a state lottery rather than on the amendment as a whole. Thus, the ballot language, while not defective in and of itself, reinforces our conclusion that Amendment 8 logrolled together two independent objects by piggybacking the passage of one on the popularity of the other.

■ It is important for us to note that in holding that Amendment 8 violates Article XIX, Section 1 of the New Mexico Constitution, we have not reached any decision regarding the legality or desirability of either a state-operated lottery or video machine games of chance. The legislature is still free to pursue the legalization of either or both forms of gaming through legislation or proposed amendments to the New Mexico Constitution, as long as any such amendments are proposed individually. In addition, we emphasize that in invalidating Amendment 8, this Court is not attempting to usurp the power of the legislature or circumvent the will of the electorate with respect to video gaming or a lottery. Indeed, by enforcing the prohibition against logrolling, we ensure that the voters are provided with the means to fully and accurately express their will on each and every issue that is presented to them as guaranteed by the New Mexico Constitution.

## CONCLUSION

A peremptory Writ of Mandamus shall issue ordering the Respondents acting as the State Canvassing Board to comply with its mandated non-discretionary duty to comply with the Constitution of the State of New Mexico and not to canvass the results of the

election held on November 8, 1994, with regard to proposed Amendment 8. The State Canvassing Board shall treat the purported ratification of said amendment as a nullity.

IT IS SO ORDERED.

FRANCHINI, Justice, DONNELLY and FLORES, Judges, concur.

RANSOM, Justice, specially concurs.

RANSOM, Justice, specially concurring.

I concur in the opinion we file today and write specially only to acknowledge that by sterile formula we could have denied the petition. Whether two or more measures within an amendment are interdependent is determined in the first instance by the rational choice of the legislature to join them as such. To that choice we defer notwithstanding the strong merits of any argument that the measures rationally may be separated. *Chavez*, 108 N.M. at 48, 766 P.2d at 308. Operational dependence is not required. Joinder may be a matter of expediency. As urged by the horse-racing interests as intervenors, the people and their elected representatives, in regard for what is politic, logically could have decided to amend the Constitution to express a choice for a state-operated lottery only on condition that a private right to wager on video machine games of chance is recognized by the Constitution. The horsemen argue that a lottery without video gaming would kill horse racing. However, in shielding "the heart of the amendment process mandated by the people in the adoption of their Constitution," *id.*, this Court cannot rule by abstract logic. For the reasons so ably expressed by Justice Frost in our opinion today, in the faithful and impartial discharge of our own Constitutional duties we must believe that neither the legislature nor the people in fact thought a mere advisory vote in support of a state-operated lottery should be dependent upon the grant of a private constitutional right to video gaming.